LIBERTY MUTUAL FIRE INSURANCE COMPANY, Plaintiff-Appellant,

v.

Kevin O'KEEFE & Parke O'FLAHERTY, LTD., Defendants-Respondents.

Court of Appeals

*No. 96–0487. Submitted on briefs September 6, 1996.—Decided October 17, 1996.*

(Also reported in 556 N.W.2d 133.)

524

For the plaintiff-appellant the cause was submitted on the briefs of *Robert J. Dreps* and *Debbie K. Lerner* of *La Follette & Sinykin* of Madison.

For the defendants-respondents the cause was submitted on the brief of *John W. Markson* and *Teresa A. Mueller* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

DYKMAN, P.J. Liberty Mutual Insurance Company appeals from a summary judgment dismissing its defamation claim against attorney Kevin O'Keefe and Parke O'Flaherty, Ltd., O'Keefe's law firm. The dispositive issue is whether a newspaper advertisement that O'Keefe placed in a newspaper circulated within Liberty Mutual's coverage territory is

capable of a defamatory meaning. We conclude that it is not and therefore affirm.

O'Keefe represented a client in a bad faith claim against Liberty Mutual. As part of his discovery attempts, he ran the following advertisement in a newspaper:

### ATTENTION

There is a lawsuit pending in Crawford County Circuit Court against Liberty Mutual Fire Insurance Company of Stitzer, WI. This suit arises out of a loss/claim caused by a barn fire.

If anyone has any information regarding Liberty Mutual Fire Insurance Company's delay or failure to pay claims or losses, please contact the undersigned.

Kevin O'Keefe, Attorney
Jody Dorschner, Legal Asst.
PARKE O'FLAHERTY, LTD.
201 Main Street
LaCrosse, WI 54602-1147
1-800-658-9448

Liberty Mutual demanded that O'Keefe retract what it considered the advertisement's defamatory material contained in the sentence: "If anyone has any information regarding Liberty Mutual Fire Insurance Company's *delay or failure to pay claims or losses . . . .*" (Emphasis added.) O'Keefe refused, and Liberty Mutual began this lawsuit.

Summary judgment methodology is well known, and we need not repeat it here. *See State Bank v. Elsen*, 128 Wis. 2d 508, 511-12, 383 N.W.2d 916, 917-18 (Ct. App. 1986). Whether O'Keefe's advertisement is

capable of a defamatory meaning is a question of law. *Bauer v. Murphy*, 191 Wis. 2d 517, 523, 530 N.W.2d 1, 3 (Ct. App. 1995). A communication is defamatory "if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *Id.*; *see* RESTATEMENT (SECOND) OF TORTS § 559 (1977). Words charging dishonorable, unethical or unprofessional conduct in a trade, business or profession are capable of a defamatory meaning. *Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 263, 258 N.W.2d 712, 715 (1977). In determining whether a communication is defamatory, we must reasonably interpret the words "in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Tatur v. Solsrud*, 174 Wis. 2d 735, 741, 498 N.W.2d 232, 234 (1993). If we conclude that statements are capable of both a defamatory and a non-defamatory meaning, we must reverse and remand for trial, for in that instance, the ultimate determination is for the jury. *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 921, 440 N.W.2d 548, 552 (1989).

There are many reported defamation cases, both in Wisconsin and elsewhere. The principles that we have mentioned are well known. The cases provide a varied and interesting report on material that courts have found to be defamatory or non-defamatory. *See* cases annotated in 50 AM. JUR. 2D *Libel and Slander* § 215 (1995) and 53 C.J.S. *Libel and Slander* §§ 28-37 (1987 & Supp. 1996). But it is not helpful here that accusing a corporation of "masquerading as a charitable enterprise simply to obtain preferential tax treatment" is defamatory, *Fields Found., Ltd. v. Christensen*, 103

Wis. 2d 465, 483, 309 N.W.2d 125, 134 (Ct. App. 1981), or that an insurance company's statement that it had declined to renew the plaintiff's insurance policy due to "loss frequency" is not capable of a defamatory meaning because at worst the words implied that the plaintiff was accident prone, *Levy v. American Mut. Liab. Ins. Co.*, 196 A.2d 475, 476-77 (D.C. 1964). We have found no case directly on point.

Liberty Mutual refers us to *Continental Casualty Co. v. Southwestern Bell Tel. Co.*, 860 F.2d 970 (10th Cir. 1988), *cert. denied*, 489 U.S. 1079 (1989), to support its assertion that accusing an insurance company of delay or failure to pay claims is defamatory. There, an officer of Southwestern Bell Telephone wrote an internal memorandum which read in pertinent part:

> As a general rule, the insurance carriers for [our sub-contractors] have responded promptly and resolved those claims that are legitimate.
>
> One exception to this has been Continental Casualty Company (CNA). On numerous occasions they have denied valid claims, ignored claimants, refused to cooperate with us, etc. We have been exposed to potential lawsuits and our reputation as a responsible corporate citizen has been damaged because of CNA's attitude and methods.
>
> For these reasons, we strongly recommend that bids no longer be accepted from contractors who are insured by CNA.

*Id.* at 971-72.

But in *Southwestern Bell*, the defendant accused an insurance company of failing to pay *valid* claims and ignoring claimants. There is a significant difference between this accusation and suggesting that an insurance company delayed or failed to pay claims.

There are many bona fide reasons why an insurance company may delay in paying a claim. The insured's delay in submitting a proof of loss or a sudden and substantial influx of claims caused by a significant disaster are two. And insurance companies are not required to pay all claims or losses, but only those covered by their insurance policies. One would not expect an insurance company that does not issue automobile policies to pay damages caused by an automobile accident if the policy clearly excludes that coverage.

We are to consider O'Keefe's words in the plain and popular sense in which they would be naturally understood in their context and under the circumstances in which they are found. *Tatur*, 174 Wis. 2d at 741, 498 N.W.2d at 234. The context is now a familiar one. An attorney is advertising for witnesses, or perhaps clients. The need for witnesses in a fire loss claim against an insurance company is not an unusual situation. Insurance companies are often sued. The word "if" dilutes Liberty's suggestion that a reader would naturally understand the "delay or failure" statement to accuse Liberty of habitually treating its policyholders unfairly. And, as we have explained, there are many legitimate reasons why an insurance company would not immediately pay all claims, a fact which is widely understood.

We regard O'Keefe's statements as a slightly more serious situation than seen in *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158 (7th Cir. 1987), *cert. denied*, 486 U.S. 1005 (1988). The court concluded:

> But not every slight is a slander or libel. The courts of Wisconsin . . . require a threshold determination

529

by the trial court that the imputation "tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." . . . More is necessary than a diminution of transactional opportunities. In a business setting the imputation, to count as defamation, must charge dishonorable, unethical, unlawful, or unprofessional conduct. . . . To imply that a person is not a dealer in Vermont Castings' free-standing woodburning stoves is not to place the commercial equivalent of the mark of Cain on him.

*Id.* at 1165-66 (citations omitted).

We conclude that a reader of O'Keefe's advertisement might be curious about the facts of O'Keefe's case. But O'Keefe is identified as an attorney, and it is commonly known that attorneys sue insurance companies. It is also commonly known that some cases are won while others are lost. In its plain and popular sense, and in the context used, the entire statement would be interpreted as a lawyer's fishing expedition, not a statement about Liberty Mutual's business ethics. While, as Liberty Mutual asserts, it would have been better had O'Keefe asked for "any information that Liberty Mutual has ever delayed or failed to pay claims or losses," thus avoiding this lawsuit, the words he used in their context are not capable of a defamatory meaning. We therefore affirm the trial court's summary judgment dismissing Liberty Mutual's complaint.[1]

---

[1] The trial court ordered Liberty Mutual's complaint dismissed because it concluded that O'Keefe's advertisement was absolutely privileged. We do not reach this issue. We may affirm a trial court's determination for reasons not stated by the

*By the Court.*—Judgment affirmed.

trial court if we agree with the trial court's conclusion. *Kafka v. Pope*, 186 Wis. 2d 472, 476, 521 N.W.2d 174, 176 (Ct. App. 1994), *aff'd*, 194 Wis. 2d 234, 533 N.W.2d 491 (1995).