**Roxian BRUNNER, Plaintiff,**

v.

**Patrick McKILLIP, Village of Eleva and Wausau Insurance Company, Defendants.**

No. 06–C–362–C.

United States District Court, W.D. Wisconsin.

May 17, 2007.

776

Stanton E. Thomas, Mallery & Zimmerman, S.C., Stevens Point, WI, Gregg T. Heidenreich, Law Offices of Stilp & Cotton, Brookfield, WI, for Defendants.

## OPINION and ORDER

CRABB, District Judge.

In this civil action for monetary relief under 42 U.S.C. § 1983, plaintiff Roxian Brunner contends that her Fourth Amendment rights were violated when, on the night of July 31, 2004, defendant Patrick McKillip, police chief for defendant Village of Eleva, Wisconsin, arrested her without probable cause, used excessive force against her and maliciously prosecuted her. In her complaint, plaintiff asserted also that defendant McKillip violated her right to freedom of speech and freedom of association in unspecified ways and that he defamed her by falsely accusing her of having thrown a glass of ice at another police officer. Moreover, plaintiff contends that defendants McKillip and Village of Eleva violated her right to equal protection and due process when McKillip visited and drove past her bar more frequently than he visited or drove past other nearby bars. Jurisdiction is present under 28 U.S.C. § 1331.

Now before the court is defendants' motion for summary judgment, in which defendants assert that they are entitled to judgment as a matter of law on all of plaintiff's claims. Because plaintiff has provided no explanation how defendants' conduct may have violated her right to due process, freedom of association or freedom of speech, defendants' motion will be granted with respect to those claims. In addition, because defendant McKillip's alleged practice of frequently patrolling plaintiff's bar and the streets surrounding it was not an act that implicated plaintiff's right to equal protection, defendants' motion for summary judgment will be granted with respect to plaintiff's equal protection claim.

However, because disputed facts remain regarding whether defendant McKillip had reason to question plaintiff on the night of July 31, 2004, thereby setting in motion the chain of events that led to her arrest, defendants' motion for summary judgment must be denied with respect to plaintiff's false arrest claim. In addition, because it remains disputed whether defendant McKillip made intentionally false statements regarding plaintiff in the course of initiating her arrest, defendants' motion will be denied with respect to plaintiff's defamation claim as well. Finally, because it remains disputed whether defendant McKillip had reason to use any force against plaintiff on the night of July 31, 2004, defendants' motion will be denied with respect to plaintiff's claim that McKillip used excessive force against her.

Before turning to the undisputed facts, a word about the parties' summary judgment submissions is in order. Perhaps as a result of the haphazard way in which the complaint was structured, neither side seems entirely clear regarding the claims being pursued in this case. The parties' confusion spills over into their proposed findings of fact, which contain innumerable facts that are irrelevant to the claims that have been developed in this lawsuit. All irrelevant and inadmissible facts have been ignored.

Second, I note that in violation of this court's summary judgment procedures, defendants failed to cite any evidence in the record to support their purported disputes with the facts proposed by plaintiff. Consequently, where plaintiff's facts are relevant, I have treated them as wholly undisputed.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Roxian Brunner is the former owner of the "Somewhere Else Bar" in Eleva, Wisconsin.

Defendant Patrick McKillip is a certified law enforcement officer. In October 1997, defendant McKillip began working for the Village of Eleva as a part-time police officer. Since 1998, he has served as Chief of Police for the Village of Eleva.

Defendant Village of Eleva is a small Wisconsin municipality, with a population of 635 residents and a downtown comprising only four blocks.

### B. Background

#### 1. Bar checks and downtown patrols

The police department for the Village of Eleva is comprised of one fulltime officer (defendant McKillip) and three part-time officers. Among the officers' duties are patrolling downtown and conducting bar checks. The Village of Eleva does not maintain any written policy regarding the frequency with which bar checks should be done or the route police officers are required to take while on patrol.

During the period relevant to plaintiff's complaint, it was defendant McKillip's practice to drive his patrol car through the downtown area on a frequent basis to observe the businesses there and insure that no one needed police assistance. Sometimes while on patrol (how often is disputed), defendant McKillip would drive his squad car in an alley on the west end of Main Street, behind plaintiff's bar. Driving through the alley was part of defendant McKillip's normal downtown patrol route.

Before August 2002, defendant McKillip conducted occasional bar checks. After January 1, 2002, McKillip conducted frequent bar checks and often assisted in bar closings. When McKillip conducted a bar check, he would generally be accompanied by either a deputy from the Trempealeau County Sheriff's Department or a police officer from the Village of Strum. Defendant McKillip conducted bar checks to look for underage drinking, locate individuals with outstanding warrants and otherwise insure that the bar's patrons remained orderly.

Between 2002 and early 2005, defendant McKillip entered plaintiff's bar to conduct checks approximately once or twice weekly. Each time McKillip entered the bar, he was either by himself or with another officer. On each occasion, he looked around for less than five minutes, then left. When plaintiff asked defendant McKillip why he was "always coming into the bar," McKillip responded that he was "just doing his job."

#### 2. Plaintiff's complaints to the village board

The Village Board for the Village of Eleva consists of seven elected board members. On several occasions, plaintiff attended town meetings at which she complained to the village board that defendant McKillip was giving her "extra attention," by entering her bar too frequently. In addition to attending meetings, plaintiff contacted the president of the village board directly to express her concerns.

In response to plaintiff's complaints, the board president directed the village's personnel committee to investigate. After completing their investigation, the committee concluded that plaintiff's complaints were unfounded.

### C. July 31, 2004

On the evening of July 31, 2004, plaintiff was at her bar. During the course of the evening she had two or three drinks. At some point, a bar patron pinched plaintiff, causing her to spill her drink.

Approximately five minutes later, defendant McKillip entered the bar, accompanied by Trempealeau County Sheriff's Deputy Dan Wieczorek. As the officers spoke to several bar patrons, Christopher Hilson, another bar patron, threw a glass

of ice across the bar at the officers; the ice landed on Deputy Wieczorek. When Hilson threw the ice, the officers were looking directly at the bar. Plaintiff had her back to the officers, while Hilson was leaning across the bar with the empty glass in his hand. Nevertheless, defendant McKillip told Deputy Wieczorek that he had seen plaintiff throw the glass of ice.

Both officers approached the bar to speak with plaintiff. As they did so, Hilson announced that he had thrown the ice. Hilson knelt on the floor and placed his wrists together as though expecting to be handcuffed. Other bar patrons echoed Hilson's confession that he was the culprit. The officers ignored Hilson and continued to approach plaintiff.

When they reached plaintiff, the officers asked her to step outside to speak with them. She refused. Defendant McKillip asked plaintiff why she had thrown the ice. Plaintiff had not seen Hilson throw the ice at the officers. Therefore, she misunderstood defendant McKillip's question, and thought he was talking about the drink she had spilled a few minutes earlier. Plaintiff told the officers that spilling her drink was "an accident." Noting that the other bar patrons were becoming rowdy, again the officers asked plaintiff to step outside to speak with them. Plaintiff said she would not leave unless accompanied by her father or a lawyer, and turned her back to the officers.

Less than one minute later, the officers grabbed plaintiff's wrists and tried to lift her off the barstool. She resisted, succeeded in freeing her wrists and fell back into her seat. Again, the officers tried to forcibly remove her from the bar. As they did so, a bar patron attacked defendant McKillip from behind. As defendant McKillip dealt with his attacker, Deputy Wieczorek grasped plaintiff's wrist and jerked it high up on her back, causing her to fall to the floor. Plaintiff stood up on her own and was escorted out of the bar by Deputy Wieczorek, who continued to hold her arm behind her back, hurting her wrist. Once outside the bar, Wieczorek formally arrested and handcuffed plaintiff. He then transported plaintiff to the Trempealeau County jail, where she was processed and released immediately. She was not prosecuted for any criminal misconduct.

As a result of her removal from the bar, plaintiff experienced bruising across the top of her left wrist and discomfort in both wrists. The bruising resolved in several days and the discomfort ended within two weeks. Plaintiff never sought medical treatment for her physical injuries.

## DISCUSSION

In her complaint, plaintiff asserted that defendants McKillip and Village of Eleva violated her right to due process and equal protection and that defendant McKillip violated her right to free speech and free association, defamed her, arrested her falsely, used excessive force against her and prosecuted her maliciously. Nowhere in plaintiff's complaint or in subsequent filings has she developed any argument regarding how or why she believes her right to free speech or free association were violated by defendant McKillip's actions. Similarly, she has not suggested how the actions of defendant McKillip or the village violated her right to due process. Because she has not developed these claims, they have been waived and defendants' motion for summary judgment will be granted with respect to them. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.,* 181 F.3d 799, 808 (7th Cir. 1999). I will address plaintiff's remaining claims in turn below. First, however, I must address whether the defendants in

this action may be sued under 42 U.S.C. § 1983.

### A. *Proper Defendants Under § 1983*

Plaintiff has named three defendants to her lawsuit: McKillip, Village of Eleva and Wausau Insurance Company. Plaintiff's lawsuit arises under 42 U.S.C. § 1983, under which liability attaches to persons who "under color of any statute, ordinance, regulation, custom, or usage" of state power deprive a citizen of any right under the Constitution or federal law. In order to qualify as a state actor, a "person" must be clothed with the authority of the state. *Home Telephone & Telegraph Co. v. Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 315, 57 L.Ed. 510 (1913).

■ The parties have not identified the connection between defendant Wausau Insurance Company and the other defendants in this case; however, it is reasonable to assume that Wausau Insurance has issued a policy to defendant McKillip, defendant Village of Eleva, or both. Regardless, there is no indication in the record that defendant Wausau Insurance Company was in a position to take any action on behalf of the state with respect to plaintiff or that it misused state power that it possessed. Its only connection to this case appears to be through its unidentified insurance contract with one or both of the other defendants. Because it is neither a "state actor" nor a "person" within the meaning of § 1983, defendant Wausau Insurance Company is not a proper defendant to plaintiff's civil rights claims and will be dismissed.

■ That leaves defendants Village of Eleva and McKillip. Plaintiff's claim against defendant Village of Eleva appears to relate only to her claim that the chief of police's "custom" of conducting checks of her bar and patrols of her block on a more frequent basis than patrols of other blocks or inspections of other bars violated her right to due process and equal protection. Local governing bodies, such as defendant Village of Eleva, may be sued under 42 U.S.C. § 1983 only when their allegedly unconstitutional actions were the result of the implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or were undertaken "pursuant to governmental custom, even [though the] custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The decisions of a municipality's final decision maker are attributable to the municipality itself. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *McGreal v. Ostrov,* 368 F.3d 657, 685 (7th Cir.2004).

It is undisputed that, as the chief of police, defendant McKillip had final decisionmaking authority with respect to all village law enforcement decisions. Therefore, his decisions regarding the frequency with which he patrolled the downtown streets and conducted bar checks may be attributed to defendant Village of Eleva.

Plaintiff's claims alleging false arrest, excessive force and malicious prosecution are brought against defendant McKillip; plaintiff asserts that he was personally involved in each of these alleged violations. Consequently, he too is a proper defendant to plaintiff's lawsuit. The next question, then, is whether plaintiff has adduced evidence in support of her claims against defendants Village of Eleva and McKillip sufficient to withstand defendants' motion for summary judgment.

### B. *Equal Protection and Due Process*

Plaintiff contends that defendants McKillip and Village of Eleva violated her

right to equal protection and due process by the manner in which McKillip patrolled and inspected her bar and the block on which the bar is located. According to plaintiff, defendant McKillip frequently drove in circles around her block and stopped by her bar more often than he stopped by other bars. Plaintiff does not allege that McKillip behaved inappropriately while on duty or that he harassed her or her customers while conducting bar checks.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Put another way, the equal protection clause "commands that no state shall deny to any person within its jurisdiction the equal protection of the laws, which essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Village of Long Grove,* 468 F.3d 975, 1000 (7th Cir.2006). It is with these governing principles in mind that the court must analyze whether actions taken by state or municipal officials violate a citizen's constitutional rights.

Throughout the course of this litigation, plaintiff's equal protection claim appears to have changed shape rather dramatically. In her complaint, plaintiff suggested that her right to equal protection was violated when defendant McKillip singled her out for differential treatment from other bar owners in the Village of Eleva. Plaintiff did not suggest that the differential treatment was a result of her membership in a protected class of citizens. Although equal protection claims are most commonly brought by members of disfavored classes of citizens or by citizens attempting to enforce fundamental rights, courts have recognized that successful equal protection claims can be brought by a "class of one," when a plaintiff alleges that she "has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). A "class of one" plaintiff may demonstrate that she has suffered intentional, irrational, and arbitrary treatment "either by showing that [s]he was treated differently from identically situated persons for no rational reason, or that [s]he was treated worse than less deserving individuals for no rational reason." *Bell v. Duperrault,* 367 F.3d 703, 707 (7th Cir.2004).

On summary judgment, plaintiff asserts for the first time that she is not bringing a "class of one" claim; rather, she contends that she "falls within a protected class because she was targeted and discriminated against by Chief McKillip based on her gender." Dkt. # 33, at 12. To prove such a claim, plaintiff would be required to show that defendant McKillip treated her differently from similarly situated male bar owners because of her gender and not for any other purpose, legitimate or not.

Regardless how plaintiff frames her equal protection claim, it suffers from numerous deficiencies. First and foremost, the equal protection clause does not protect citizens from all forms of differential treatment; only from those that result in adverse treatment of individuals based on illegitimate factors, such as membership in a protected class or sheer animus on the part of state officials. Even if defendant McKillip did frequent plaintiff's bar more frequently than the other two bars in Eleva, and even if he drove circles around her block more often than he drove circles

around the other three blocks that made up his downtown patrol, he did not violate the Fourteenth Amendment by doing so. It is undisputed that defendant McKillip did not threaten or intimidate plaintiff or her customers during bar checks and that he conducted the checks and his patrol as part of his normal downtown patrol. In short, he did not direct adverse conduct of any sort toward plaintiff.

Furthermore, even if defendant McKillip's actions did implicate plaintiff's equal protection rights, plaintiff has adduced no evidence that defendant McKillip treated her differently from other bar owners, male or female. Although plaintiff and some of her clients report anecdotally that they saw defendant McKillip in plaintiff's bar more often than they saw him in the other bars they frequented, the patrons have no foundation for their conclusion that defendant McKillip performed more checks of plaintiff's bar than of the other two bars in town. Because plaintiff not produced any evidence that she was treated unfavorably in any way, much less in comparison to other bar owners of either gender, defendants' motion for summary judgment will be granted with respect to plaintiff's claim that defendants McKillip and Village of Eleva violated her right to equal protection.

### C. *Arrest Related Claims*

The heart of plaintiff's case lies in her claims relating to her arrest on the night of July 31, 2004. Plaintiff contends that by falsely accusing her of having thrown a glass of ice at Deputy Wieczorek, defendant McKillip defamed her and set in motion a chain of events that led to her false arrest, the use of excessive force against her and malicious prosecution of charges against her.

### 1. *Defamation*

■ Plaintiff contends first that defendant McKillip defamed her when he told Deputy Wieczorek that he had seen her throw a glass of ice, when she had not done so. Defamation is a tort that arises under state law. *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (Constitution provides no protection against damage to reputation). Because the tort occurred in Wisconsin, Wisconsin law applies to this claim. *Schindler v. Seiler,* 474 F.3d 1008, 1010 (7th Cir.2007). To prove a claim of defamation under Wisconsin law, a plaintiff must adduce evidence showing that an allegedly defamatory statement "(1) was spoken to someone other than the person defamed, (2) is false, (3) is unprivileged and (4) tends to harm the defamed person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Torgerson v. Journal/Sentinel, Inc.,* 210 Wis.2d 524, 534, 563 N.W.2d 472, 477 (1997); *Hart v. Bennet,* 2003 WI App 231, ¶ 21, 267 Wis.2d 919, 941, 672 N.W.2d 306, 317.

■ Plaintiff alleges that defendant McKillip falsely told Deputy Wieczorek that she threw a drink at him. Although the words defendant McKillip said are not in themselves defamatory, "[courts] must reasonably interpret the words 'in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered.'" *Liberty Mutual Fire Insurance Co. v. O'Keefe,* 205 Wis.2d 524, 527, 556 N.W.2d 133 (1996) (quoting *Tatur v. Solsrud,* 174 Wis.2d 735, 741, 498 N.W.2d 232, 234 (1993)). In this case, the act of which defendant McKillip accused plaintiff was criminal, as evidenced by her later arrest for disorderly conduct. Under these circumstances, it is reasonable to conclude that the statement would tend to harm

plaintiff's reputation "so as to lower h[er] in the estimation of the community."

Only one question remains: Did defendant McKillip see plaintiff throw the drink, as he reported to Deputy Wieczorek? If so, plaintiff's defamation claim fails. If not, defendant McKillip's statement was defamatory. The question is one for the jury to resolve. Consequently, defendants' motion for summary judgment will be denied with respect to plaintiff's defamation claim.

### 2. False arrest

■ Plaintiff's next related claim is that defendant McKillip violated her Fourth Amendment rights by initiating her allegedly false arrest. Whether a local police officer would be authorized to make an arrest typically turns initially on state law. *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Williams v. Jaglowski,* 269 F.3d 778, 782 (7th Cir.2001). The Fourth Amendment question is whether the officers had probable cause to believe that the predicate offense, as defined by state law, had been committed. *Williams,* 269 F.3d at 782. Probable cause to arrest exists where an officer is aware of facts "sufficient to warrant a prudent person in believing that the suspect had committed or was committing a crime." *Marshall ex rel. Gossens v. Teske,* 284 F.3d 765, 772 (7th Cir.2002).

Before turning to the substance of plaintiff's claim, it is necessary to summarize the very different ways in which plaintiff and defendant McKillip have framed the issue of plaintiff's allegedly false arrest. Although defendant McKillip concedes that he asked plaintiff to leave the bar twice and began to physically remove her from the premises, he argues that plaintiff cannot pursue her false arrest claim against him because he did not handcuff her or transport her to the police station. In

short, he argues that he did not "arrest" her at all. Not surprisingly, plaintiff sees it differently. According to plaintiff, defendant McKillip knew that she did not throw the glass of ice at Deputy Wieczorek but nevertheless told Wieczorek that she had done so. Believing defendant McKillip's account of what had happened (and ignoring the clamoring of the bar patrons who insisted that Christopher Hilson had thrown the ice), Wieczorek accompanied McKillip as he approached plaintiff to question her, initiating the chain of events that ended with Wieczorek's decision to arrest her. Plaintiff acknowledges that defendant McKillip did not handcuff her; however, she contends that he should be held responsible for her arrest for two reasons. First, she asserts that defendant McKillip "arrested" her at the moment he ordered her to step outside the bar because she was not reasonably free to disobey his command (as evidenced by the officers' decision to forcibly remove her from the bar when she refused to leave). Second, plaintiff contends that because defendant McKillip lied to Wieczorek about seeing plaintiff throw the glass of ice, and because that information factored strongly into Wieczorek's decision to arrest her formally, McKillip was personally involved in her arrest even though he was not physically present at the time she was handcuffed and taken to the police station.

I conclude that plaintiff has the better position, though for reasons slightly different from those she has articulated. The Fourth Amendment's protection does not begin at the moment a citizen is handcuffed. It "governs 'seizures' ... which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[W]henever a police officer accosts an individual and restrains h[er] free-

dom to walk away, he has 'seized' that person." *Id.* It is difficult to see how defendant McKillip's order directing plaintiff to leave the bar for questioning, followed by his physical enforcement of that order, can be characterized as anything less than a restraint on plaintiff's ability to resist his commands. Therefore, I conclude that although defendant McKillip did not arrest plaintiff formally, he did seize her within the meaning of the Fourth Amendment. In assessing whether his conduct was constitutional, "the facts [must] be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868. Reasonableness turns on what the officers knew, not whether they knew the truth or whether they should have known more. *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir.2007); *Gramenos v. Jewel Companies*, 797 F.2d 432, 439 (7th Cir.1986).

■ Defendant McKillip makes much of the fact that he had probable cause to detain plaintiff for disorderly conduct because he saw her throw a glass of ice. *See* Wis. Stat. § 947.01 ("Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.") Of course, that argument relies on the premise that defendant McKillip did, in fact, see plaintiff throw the ice. However, it is undisputed that Christopher Hilson was the person who threw the ice at Deputy Wieczorek, making it seem unlikely that defendant McKillip saw what he avers he did. Moreover, on summary judgment the court is always required to take the disputed facts in the light most favorable to the nonmoving party. In this case, doing so leads to the conclusion that defendant McKillip lacked probable cause to believe plaintiff had engaged in disorderly conduct.

Defendant argues next that even if he lacked a reason to detain plaintiff for disorderly conduct, she gave him probable cause to arrest her when she resisted his order to step outside the bar for questioning. In describing plaintiff's refusal to cooperate with the officer's directives, both sides use interchangeably the terms "resisting arrest" and "obstructing justice." In fact, the two are distinct crimes. "Obstruction of justice" refers to the crime penalized under Wis. Stat. § 946.65, which states, "Whoever for a consideration knowingly gives false information to any officer of any court with intent to influence the officer in the performance of official functions is guilty of a Class I felony." Because that statute is clearly inapplicable here, I understand defendant to contend that by resisting his order, plaintiff violated Wis. Stat. § 946.41(1), which reads, "Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor." But once again, defendant McKillip is putting the cart before the horse. "[B]y its very terms, Wis. Stat. § 946.41(1) requires an officer to have 'lawful authority' before a citizen can be charged with resisting an officer." *State v. Annina*, 2006 WI App 202, ¶ 18, 296 Wis.2d 599, 723 N.W.2d 708. If defendant McKillip *knew* that plaintiff had not thrown the drink, he would not have the lawful authority to demand that she step outside the bar for further questioning. Without lawful authority to make the demand in the first place, he would have no probable cause to believe plaintiff was violating § 946.41(1) by ignoring his directive.

One further matter deserves mention. To be liable for constitutional violations under § 1983, a state actor must be directly involved in the violation. That does not mean, however, that he must be present at every stage of the violation. It is enough that a state actor directs (or, in the case of supervisors, merely consents) to the constitutional deprivation. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir.2002).

Despite defendant McKillip's protestations to the contrary, he was involved personally in plaintiff's arrest by virtue of the information he provided to Deputy Wieczorek. If defendant McKillip lied to Wieczorek, for the purpose of setting in motion plaintiff's arrest on grounds that were meritless, he may be held responsible for the resulting arrest, even if Deputy Wieczorek himself could not be held liable for the arrest (believing reasonably that he had probable cause to arrest plaintiff based on defendant McKillip's accusation).

Whether defendant McKillip violated plaintiff's Fourth Amendment rights rises and falls on whether he accurately reported to Deputy Wieczorek that he had seen plaintiff throw ice at him. Because the answer to that question remains in hot dispute, I will deny defendants' motion for summary judgment with respect to plaintiff's claim that defendant McKillip violated her rights under the Fourth Amendment by falsely "arresting" her on the night of July 31, 2004.

### 3. *Qualified immunity*

Defendant McKillip contends that even if he violated plaintiff's rights under the Fourth Amendment, he is entitled to qualified immunity for his actions. The doctrine of qualified immunity "gives public officials the benefit of legal doubts" by insuring that "officers are on notice their conduct is unlawful" before they are subject to suit. *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Defendants will be denied qualified immunity only when the rights that have been violated are sufficiently particularized to have put potential defendants on notice that their conduct was unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the United States Supreme Court held:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

It is well established that before seizing a person, police must have a reasonable basis for the detention. If plaintiff succeeds in showing that defendant McKillip intentionally misled Deputy Wieczorek into believing she played a role in the ice-throwing incident when McKillip knew that she did not, McKillip will not be entitled to qualified immunity for his role in plaintiff's arrest.

### 4. *Excessive force*

■ Related to her false arrest claim is plaintiff's claim that defendant McKillip used excessive force against her in the course of removing her from her barstool. Because the allegedly excessive force was used during the course of a seizure, plaintiff's excessive force claim arises under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Morfin v. City of East Chicago*, 349 F.3d 989, 1004 (7th Cir.2003).

"Whether an officer used excessive force during an arrest is determined under the 'objective reasonableness' standard." *Smith v. City of Chicago,* 242 F.3d 737, 743 (7th Cir.2001). Factors to be considered include " 'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight.' " *Id.* (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Ultimately, a court must "balance the amount of force used in relation to the danger posed to the community or to the arresting officers." *Smith,* 242 F.3d at 743.

It is undisputed that when plaintiff refused to follow defendant McKillip and Deputy Wieczorek outside, both officers grasped her by her wrists and lifted her off her seat. As she pulled away from them, she fell back onto the stool. At about the same time, defendant McKillip was attacked from behind by a bar patron. From that moment onward, defendant McKillip was not involved in removing plaintiff from the bar, handcuffing her or otherwise using any physical force against her. Therefore, plaintiff's excessive force claim turns exclusively on defendant McKillip's act of lifting her off the barstool by her wrists.

Defendant McKillip emphasizes that plaintiff suffered no serious physical harm and sought no medical treatment for her sore wrists following her arrest. Those points are all relevant with respect to the amount of damages, if any, that plaintiff may be able to recover if she proves her rights were violated. However, when it comes to assessing the reasonableness of the defendant McKillip's use of force in the first instance, the severity of plaintiff's injury is only one factor among many. When balanced against the fact (viewed in plaintiff's favor) that defendant McKillip may have had no reason whatsoever to suspect plaintiff of wrongdoing, any use of force, however slight, becomes objectively unreasonable under the circumstances and would support a finding of liability on plaintiff's excessive force claim. Therefore, defendants' motion for summary judgment will be denied with respect to plaintiff's excessive force claim.

### 5. *Malicious prosecution*

■ Plaintiff's final claim is that she was maliciously prosecuted as a result of her false arrest. The Court of Appeals for the Seventh Circuit has interpreted the United States Supreme Court's opinion in *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), to preclude "constitutional torts of malicious prosecution when state courts are open to such challenges." *Newsome v. McCabe,* 256 F.3d 747, 751 (7th Cir.2001).

Wisconsin recognizes a cause of action for malicious prosecution, *State v. Kramer,* 2001 WI 132, ¶ 15, 248 Wis.2d 1009, 637 N.W.2d 35, and plaintiff has made no attempt to explain how her malicious prosecution claim could remain in federal court in light of the state court remedy. However, even if Wisconsin did not provide a forum for claims of malicious prosecution, plaintiff's claim would be doomed for a more fundamental reason: she has not suggested that she was ever charged with a crime, much less prosecuted for one. Without prosecution, there can be no tortious prosecution. For this reason, defendants' motion will be granted with respect to plaintiff's claim that she was prosecuted maliciously.

### ORDER

IT IS ORDERED that the motion for summary judgment of defendants Patrick

McKillip, Village of Eleva and Wausau Insurance Company is

1. GRANTED with respect to plaintiff's claims that

a) defendants McKillip and Village of Eleva violated her right to due process and equal protection; and

b) defendant McKillip violated her right to free speech, free association and freedom from malicious prosecution.

2. DENIED with respect to plaintiff's claims that defendant McKillip defamed and falsely arrested her and used excessive force against her on the night of July 31, 2004.

FURTHER, IT IS ORDERED that

3. Defendant Wausau Insurance Company is DISMISSED from this lawsuit.

4. A telephone scheduling conference will be held on May 25, 2007, at 9:00 a.m. before United States Magistrate Judge Stephen Crocker to reschedule the trial in this case.