IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBERT HARRIS,**
**Plaintiff Below, Petitioner**

**v.) No. 24-ICA-264**       (Cir. Ct. Lewis Cnty. Case No. CC-21-2023-C-71)

**WARNER LAW OFFICE AND**
**CLARKSBURG PUBLISHING CO.**
**D/B/A WESTON DEMOCRAT**
**AND THE RECORD DELTA,**
**Defendants Below, Respondents**

**FILED**

**May 28, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Harris ("Dr. Harris") argues that Respondents Warner Law Office ("Warner") and Clarksburg Publishing Co. ("CPC") defamed him in multiple advertisements published on the internet and in print. In early 2023, Warner published advertisements soliciting potential clients on Facebook and in the Weston Democrat, a paper owned by CPC. Specifically, the advertisements asked readers if they had been sexually assaulted or sexually abused by a local gynecologist and directed them to contact Warner about any such claims. Although these advertisements did not mention any specific gynecologist, Dr. Harris, a gynecologist then working in Weston, West Virginia, interpreted the advertisements to be targeted at his patients. Dr. Harris filed the underlying lawsuit, alleging defamation and intentional infliction of emotional distress ("IIED") claims, against Warner and CPC based on these advertisements. In an order entered June 18, 2024, the Circuit Court of Lewis County granted Respondents' motions to dismiss, finding that the advertisements were not defamatory or outrageous. It is from that order that Dr. Harris now appeals. On appeal, Warner and CPC each filed a brief in support of the circuit court's order. Dr. Harris did not file a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Dr. Harris is represented by Patrick Crowe, Esq. Warner is represented by Brant T. Miller, Esq., Richard E. Griffith, Esq., and Robert P. Fitzsimmons, Esq. CPC is represented by Trevor K. Taylor, Esq.

1

In March 2023, Warner published an advertisement on Facebook with the following text:

> Were you sexually abused by a gynecologist in the Weston, West Virginia area? Warner Law Offices is representing women in the area now. You have a right to seek justice and compensation for the harm you've suffered. If you have experienced sexual abuse from a gynecologist, contact us for a free and confidential case evaluation. We are here to help you.

Each version of the advertisement included a stock image of a woman—in some versions, wearing medical attire and sitting in what appears to be a medical examination room—overlaid with the text "Have you been sexually assaulted by a local gynecologist?," "Seek Justice," and "Free Confidential Case Review." Each version of the advertisement included a link to a webpage operated by Warner.

In late April and early May of 2023, Warner published a similar advertisement in the Weston Democrat, a newspaper owned and operated by CPC. This advertisement was headed by the text "Have you been sexually assaulted by a gynecologist in the local area?" The advertisement included a stock image of a woman with her face in her hands, sitting in what appears to be a medical examination room. The image was overlaid with the text "Call now for a free, confidential case review" and a local phone number. Below the image, the advertisement included the additional text "Warner Law Offices, PLLC is representing women in the area now." This newspaper advertisement was also published in the Record Delta, a CPC paper serving Buckhannon, West Virginia, on April 29, 2023.

In early 2023, Dr. Harris was working as a licensed gynecologist at Stonewall Jackson Memorial Hospital Co. ("Stonewall") in Weston, West Virginia. In early May of 2023, Dr. Harris notified Stonewall of these advertisements. On or around May 5, 2023, Stonewall addressed Dr. Harris about ending his employment there, and Dr. Harris ultimately resigned.[2] At that time, Dr. Harris was scheduled to begin employment at a medical practice in Martinsburg, West Virginia. In or around August of 2023, the hiring physician contacted Dr. Harris to revoke that employment offer.

Dr. Harris filed the underlying complaint against Warner on September 4, 2023, asserting claims of defamation, defamation per se, and IIED based on Warner's advertisements. Dr. Harris did not attach copies of the advertisements to the complaint or directly quote their language. Instead, he alleged that "[Warner] advertised non-privileged defamatory statements to more than one thousand third parties, which falsely alleged sexual assault was or has been committed by Dr. Harris." On September 21, 2023, Warner filed a

---

[2] Although he resigned, Dr. Harris alleged that his loss of employment was caused by the advertisements.

motion to dismiss for failure to state a claim. Dr. Harris filed a response, and on January 2, 2024, Warner filed a reply memorandum in support of the motion. In its reply, Warner argued that the defamation claims failed because the advertisements did not contain defamatory statements or refer to Dr. Harris, and that the IIED claim failed as a matter of law because Warner's behavior was not outrageous or intentional. Warner attached several documents to its reply memorandum, including copies of the advertisements at issue. On January 16, 2024, Dr. Harris filed a response to Warner's reply memorandum.

On January 5, 2024, Dr. Harris filed a motion for leave to file an amended complaint, seeking to add CPC as a named defendant. On January 30, 2024, the circuit court entered an order granting this motion. On February 5, 2024, the circuit court held a hearing on Warner's motion to dismiss and took the motion under advisement. On February 8, 2024, Dr. Harris filed his amended complaint, raising the same claims with substantially similar allegations, but naming CPC as an additional defendant. On March 8, 2024, CPC filed a motion to dismiss the amended complaint for failure to state a claim, arguing that each of Dr. Harris's claims failed as a matter of law. Warner filed a supplemental brief joining in this motion. On June 6, 2024, the circuit court held a hearing on the motions to dismiss.

On June 18, 2024, the circuit court entered its order granting Respondents' motions to dismiss. The circuit court considered the advertisements at issue and found that Dr. Harris's defamation claims failed because the advertisements at issue did not contain defamatory statements. Instead, the circuit court found that the advertisements contained questions rather than statements. In addition to finding that the advertisements were not capable of a defamatory meaning, the circuit court made several other findings related to the defamation claims. In determining whether the advertisements indirectly referenced Dr. Harris, the circuit court considered the meaning of the word "area" in the advertisements and took judicial notice of the fact that local citizens will travel to Morgantown, Clarksburg, Bridgeport, and Buckhannon for medical services. The circuit court also concluded that Dr. Harris's IIED claim failed as a matter of law because the advertisements were not so extreme or outrageous as to exceed the bounds of decency.[3] It is from this order that Dr. Harris now appeals.

Our review of an order granting a motion to dismiss is *de novo*. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss . . . is *de novo*."). "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove

---

[3] Dr. Harris states that it is unclear whether the circuit court dismissed his IIED claim against both Respondents, or only against Warner. Given that the June 18, 2024, order addressed both Warner and CPC's motions to dismiss and disposed of the entire case, we find that the court's order dismissed Dr. Harris's IIED claims against both Respondents.

no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Further, our review of this matter is guided by the Supreme Court of Appeals of West Virginia's ("SCAWV") recognition, in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Additionally, "[a]bsent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl Pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995); *see* Syl. Pt. 7, *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020) (holding that court's decision to review document outside the pleading at 12(b)(6) stage is reviewed for abuse of discretion).

Dr. Harris raises four assignments of error on appeal. First, he argues that the circuit court erred in finding that his defamation claims failed as a matter of law. Next, Dr. Harris suggests that the circuit court erroneously viewed extrinsic evidence and made evidentiary determinations at the motion to dismiss stage. Third, he alleges that the court erred in finding that his IIED claim failed as a matter of law. Finally, Dr. Harris argues that the court erred by adding a party to the style of the case. We address each argument in turn.

The SCAWV has consistently held that "[t]he essential elements for a successful defamation action by a private individual[4] are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983). Here, although the circuit court made various findings related to the other elements of a defamation claim, it ultimately found that Dr. Harris's defamation claims failed as a matter of law because the challenged advertisements did not contain defamatory statements.

In his first assignment of error, Dr. Harris contends that the circuit court erred in finding that his defamation claims failed as a matter of law. Specifically, he argues that the circuit court should have relied on the allegations set forth in his amended complaint, which clearly state that the advertisements contained defamatory statements. Dr. Harris further argues that the circuit court erred by making factual determinations about the advertisements at the motion to dismiss stage, as the circuit court's determination that the advertisements contained a question rather than a statement was an issue for the jury. We disagree.

The SCAWV has held that "[a] court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory

---

[4] No party argues that Dr. Harris should be considered a public figure.

4

meaning." Syl. Pt. 6, *Long v. Egnor*, 176 W. Va. 628, 346 S.E.2d 778 (1986). Moreover, the SCAWV has repeatedly affirmed circuit courts that have reviewed allegedly defamatory statements and made this legal determination at the 12(b)(6) stage. *See, e.g.*, *Ojeda v. Phillips*, No. 22-0057, 2023 WL 3196368, at *3 (W. Va. May 2, 2023) (memorandum decision); *Giles v. Kanawha Cnty. Bd. of Educ.*, No. 17-0139, 2018 WL 300605, at *4 (W. Va. Jan. 5, 2018) (memorandum decision). Therefore, in finding that the challenged advertisements did not contain statements capable of a defamatory meaning, the circuit court decided a legal issue, rather than a factual issue.

On review of the challenged advertisements,[5] we find no basis to reverse the circuit court. "A statement may be described as defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Crump*, 173 W. Va. at 706, 320 S.E.2d at 77 (quoting Restatement (Second) of Torts § 559 (1977)). The SCAWV has recognized that defamation per se means "a statement that is defamatory in and of itself and is not capable of an innocent meaning." *Pritt v. Republican Nat. Comm.*, 210 W. Va. 446, 450 n.4, 557 S.E.2d 853, 857 n.4 (2001) (quoting Black's Law Dictionary 427 (7th ed.1999)).[6] "Defamation law requires that [a court] consider the alleged defamatory words in the context in which they were made." *Hupp v. Sasser*, 200 W. Va. 791, 798, 490 S.E.2d 880,

---

[5] In his brief, Dr. Harris argues that the circuit court erred by reviewing documents not attached to the amended complaint, including the advertisements attached to Warner's motion to dismiss briefing. Dr. Harris qualifies this position by stating that it was appropriate for the circuit court to review the advertisements "for the purpose of determining if they state what Petitioner alleged they stated in his complaints." However, at oral argument before this Court, Dr. Harris's counsel acknowledged that the advertisements attached to Warner's briefing in support of the motion to dismiss were the advertisements referenced in Dr. Harris's complaint, that his claims are based on those advertisements, and that he does not challenge their authenticity. Given these recognitions, we find that the circuit court did not abuse its discretion in reviewing and considering the advertisements at the 12(b)(6) stage. *See* Syl. Pt. 6, in part, *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020) (holding that a court at the 12(b)(6) stage can consider documents submitted with a motion to dismiss without converting it to a motion for summary judgment if "(1) the pleading implicitly or explicitly refers to the document; (2) the document is integral to the pleading's allegations; and (3) no party questions the authenticity of the document").

[6] "At common law, defamation per se includes only imputations of a crime of moral turpitude, imputations of a loathsome disease, imputations of sexual misconduct by a woman, and imputations which affect a business, trade, profession or office." *Mauck v. City of Martinsburg*, 167 W. Va. 332, 336 n.3, 280 S.E.2d 216, 219 n.3 (1981) (citing Restatement (Second) of Torts §§ 571–74 (1977)).

887 (1997) (per curiam) (citing *Goldberg v. Coldwell Banker, Inc.*, 553 N.Y.S.2d 432, 433 (N.Y. App. Div. 1990) and *Long*, 176 W. Va. at 637, 346 S.E.2d at 787).

Although Dr. Harris argues that the advertisements accuse him of sexually assaulting his patients, we find that the advertisements make no such accusations against Dr. Harris. Indeed, neither the Facebook advertisement nor the Weston Democrat advertisement asserts that anyone committed sexual assault or abuse. Instead, the Facebook advertisement asks the reader "Were you sexually abused by a gynecologist in the Weston, West Virginia area?" Despite Dr. Harris's protestations, this is undoubtedly a question, rather than a statement, nor does it read as a statement disguised in the form of a question.

Moreover, while Dr. Harris focuses on the opening question in the Facebook advertisement, the remaining language of the advertisement also does not contain any defamatory statements. The statement, "Warner Law Offices is representing women in the area now," even if read to imply that Warner is representing women in sexual assault or abuse cases, does not state whom those cases are against or claim that the allegations in those claims have been proven true. While the advertisement includes the statement that "[y]ou have a right to seek justice and compensation for the harm you've suffered," in its context as a follow-up to the initial question, it is clear that this language is directed at those readers who believe they have been sexually assaulted, and is in effect a conditional statement that if someone has suffered an injury, they have a right to relief. This is borne out by a reading of the remainder of the advertisement, which provides that "[i]f you have experienced sexual abuse from a gynecologist, contact us for a free and confidential case evaluation. We are here to help you." Again, the language is conditional, and specifically contemplates that the reader might not have experienced sexual abuse by a gynecologist. Further, the advertisement only guarantees case evaluation, implying that Warner may determine that perceived cases of assault or abuse lack merit.

Similarly, the more limited advertisement in the Weston Democrat begins with the question, "Have you been sexually assaulted by a gynecologist in the local area?" but lacks most of the additional statements that were included in the Facebook advertisement. However, like the Facebook advertisement, this advertisement includes the text "[c]all now for a free, confidential case review," again implying that Warner may find potential claims lack merit.

At most, the advertisements at issue suggest that certain readers might have been victims of sexual abuse or assault by an unnamed gynecologist. However, the SCAWV has previously determined that even a direct suggestion that a person might have committed a crime, while stopping short of an accusation, is not defamatory. In *Belcher v. Wal-Mart Stores, Inc.*, managers of the respondent Wal-Mart suggested that the petitioner, who was attempting to return a laptop to the store, had "a fake, felonious receipt." *Belcher v. Wal-Mart Stores, Inc.*, 211 W. Va. 712, 717, 568 S.E.2d 19, 24 (2002) (per curiam). The SCAWV found that these statements did not rise to the level of an accusation of a crime

6

and were not defamatory. *Id.* at 719-20, 568 S.E.2d at 26-27. Here, the advertisements at issue do not directly name Dr. Harris and only ask readers about possible sexual abuse or assault. Accordingly, we agree with the circuit court that the challenged advertisements, read in their context as attorney advertisements, are not capable of a defamatory meaning, and we affirm the dismissal of Dr. Harris's defamation and defamation per se claims as a matter of law.[7]

Dr. Harris also argues that the circuit court erred in making findings on several of the other elements of defamation, including whether the advertisements indirectly reference him. However, since we affirm the circuit court on the threshold legal issue of whether the advertisements were capable of a defamatory meaning, it is unnecessary to address these arguments. *See Hupp*, 200 W. Va. at 799, 490 S.E.2d at 888 (finding it unnecessary to address other elements of defamation claim after determining statements at issue were not defamatory).

Dr. Harris next contends, in his second assignment of error, that the circuit court erred in viewing extrinsic evidence and making evidentiary determinations. He argues that, in interpreting the word "area" in the advertisements, the circuit court erred in taking judicial notice that local citizens will travel for medical services to Morgantown, Clarksburg, Bridgeport, and Buckhannon. Dr. Harris claims that, because he alleged that the challenged advertisements referred to him, there was no basis at the motion to dismiss stage for the circuit court to decide where citizens travel for medical services.

To the extent Dr. Harris contests the propriety of judicial notice at the motion to dismiss stage, we find that his argument is misplaced. "Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice." *California State Teachers' Ret. Sys. v. Blankenship*, 240 W. Va. 623, 638, 814 S.E.2d 549, 564 (2018) (quoting *Forshey v.*

_____

[7] While their decisions are not binding, we also observe that other courts that have considered similar attorney advertisements have determined they were not defamatory. *See, e.g.*, *L. Offs. of Bradley J. Rephen, P.C. v. Lemberg & Assocs., LLC*, No. 7:10-CV-4964-JGM, 2011 WL 13267203, at \*1 (S.D.N.Y. June 6, 2011) (finding that law firm's internet advertisement that included language, "[s]ue Rephen Law. Stop the Calls. 950 Cases Settled. Get Paid $1,000. 99% Success Rate," was not defamatory); *Dello Russo v. Nagel*, 817 A.2d 426, 430-32 (N.J. Super Ct. App. Div. 2003) (finding that law firm's newspaper advertisement that asked readers if they had been treated by two specific eye doctors at a specific practice, asked whether they "suffered a bad result from eye surgery" and if so, offered a "free consultation to discuss your legal rights," was not defamatory); *Liberty Mut. Fire Ins. Co. v. O'Keefe*, 556 N.W.2d 133, 134-36 (Wis. Ct. App. 1996) (finding that the statement, "[i]f anyone has any information regarding Liberty Mutual Fire Insurance Company's delay or failure to pay claims or losses, please contact the undersigned," in an attorney's newspaper advertisement was not defamatory).

*Jackson*, 222 W. Va. 743, 747, 671 S.E.2d 748, 752 (2008)); *see* W. Va. R. Evid. 201(b), (d).

Moreover, any error in the circuit court's decision to take judicial notice that local citizens travel to other cities in the region for medical care and interpret the word "area" in the advertisements was harmless. "On appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity in the proceedings in the trial court which does not affect the substantial rights of the parties." Syl. Pt. 2, *Boggs v. Settle*, 150 W. Va. 330, 145 S.E.2d 446 (1965). We have affirmed the dismissal of Dr. Harris's defamation claims because the advertisements are not capable of a defamatory meaning, and we declined to address the circuit court's findings on any of the other elements of those claims, including whether the advertisements indirectly referenced Dr. Harris. Therefore, the circuit court's decision to take judicial notice and interpret the word "area" has no impact on our decision to affirm the dismissal of the defamation claims, and any error related to these issues was harmless.[8]

Next, in his third assignment of error, Dr. Harris argues that the circuit court erred in dismissing his IIED claim. The SCAWV has explained that an IIED plaintiff must demonstrate four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, in part, *Travis v. Alcon Lab'ys, Inc.*, 202 W. Va. 369, 504 S.E.2d 419 (1998). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Travis*, 202 W. Va. 369, 504 S.E.2d 419, syl. pt. 4.

---

[8] Dr. Harris also takes issue with the circuit court's alleged consideration of internet search results that were attached to Warner's reply memorandum in support of its motion to dismiss. While the circuit court should have expressly disregarded these searches, *see Mountaineer Fire*, 244 W. Va. 508, 854 S.E.2d 870, syl. pt. 6, we find that its failure to do so is at most harmless error. The circuit court does not appear to have relied on the internet search results in dismissing the amended complaint, and those results play no role in this Court's decision to affirm on legal grounds.

Here, the circuit court found that Dr. Harris's IIED claim failed as a matter of law because the advertisements were not outrageous. The circuit court also found that the "clear intent" of the advertisements was to generate business for Warner. Dr. Harris takes issue with both of the court's conclusions. Having determined that the advertisements at issue were not defamatory, we conclude that their publication cannot be considered outrageous and affirm the circuit court's ruling in that regard.[9] Warner and CPC published advertisements that, while referencing the uncomfortable matter of possible sexual assault or abuse, merely asked potential readers of the advertisements if they had been subjected to either, and offered legal consultations. The publication of these non-defamatory advertisements cannot reasonably be considered outrageous. Because Dr. Harris's IIED claim fails on this threshold legal issue, it is unnecessary for this Court to decide if the circuit court was correct in evaluating Respondents' intent in publishing the advertisements. Therefore, we affirm the circuit court's dismissal of Dr. Harris's IIED claim.

In his final assignment of error, Dr. Harris argues that the circuit court erred in adding another party— the Record Delta—to the style of the case. As an initial matter, we disagree that the Record Delta was added as a party; rather, it was added as another "doing business as" or "d/b/a" name for Respondent CPC. In his brief, Dr. Harris claims that this alleged error was prejudicial because the circuit court relied on the fact that the Record Delta is a Buckhannon newspaper in concluding that the "area" referred to in the advertisements at issue must include Buckhannon.

While the circuit court noted in its June 18, 2024, order that the challenged newspaper advertisement was also published in the Record Delta, contrary to Dr. Harris's interpretation, it does not appear that the circuit court necessarily relied on this fact in finding that the word "area" in the advertisements included Buckhannon. Moreover, we find that any error in adding the Record Delta as a business pseudonym for CPC was harmless. We have affirmed the dismissal of Dr. Harris's defamation claims and his IIED claim on legal grounds without reference or consideration of the Record Delta or reliance on the circuit court's interpretation of the word "area" in the advertisements. Moreover, at oral argument before this Court, Dr. Harris's counsel conceded that this alteration of the

---

[9] Dr. Harris also argues, in passing, that "the circuit court's insufficient reasoning to dismiss the [IIED] cause of action is plain error." This is inadequate to preserve an argument on appeal. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) (issues "mentioned only in passing" are not considered on appeal). Moreover, while the circuit court's findings on the issue of whether the publication of the advertisements could be considered outrageous were limited, remand is unnecessary because "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

case style did not harm Dr. Harris. Accordingly, we find no basis to reverse the circuit court on this assignment of error.

Based on the foregoing, we affirm the June 18, 2024, order of the Circuit Court of Lewis County.

Affirmed.

**ISSUED:** May 28, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge Ryan White