STATE of Wisconsin, Plaintiff-Respondent,

v.

Anna ANNINA, Defendant-Appellant.

Court of Appeals

*No. 2005AP876–CR. Submitted on briefs October 5, 2005. —Decided September 13, 2006.*

2006 WI App 202

(Also reported in 723 N.W.2d 708.)

600

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Henak Law Office S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey A. Sisley*, assistant district attorney, Port Washington. An additional brief was submitted by *Peggy A. Lautenschlager*, attorney general, and *Maura F.J. Whelan*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. SNYDER, P.J.   Anna Annina appeals from an order denying her motion to vacate and dismiss a judgment convicting her of resisting an officer, contrary to WIS. STAT. § 946.41(1) (2003–04).[1] Annina contends that the police officer did not have lawful authority to enter her home at the time she resisted and therefore the required elements of a resisting charge are not present. While we acknowledge that the warrant to search Annina's home was invalid, the record facts support the State's contention that the charge of resisting is related to Annina's disorderly conduct and therefore arose in the context of the officer's lawful exercise of authority. Accordingly, we affirm the judgment and order of the circuit court.

## BACKGROUND

¶ 2.   The facts underlying Annina's *Alford*[2] plea to the charge of resisting an officer are as follows. On January 24, 2004, Mequon Police Officer Umhoefer

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless stated otherwise.

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

received a complaint regarding parked cars in front of the Annina residence. As Umhoefer approached the residence, she noted that four juveniles were standing in the garage and, upon seeing her, they ran into the residence. Umhoefer then spoke to Annina through the partially open front door and advised her of the parking complaint. Umhoefer described Annina as "defensive" and felt she was "acting suspicious."

¶ 3. Umhoefer left, but returned shortly thereafter. She had been advised by Officer Riley that he had arrested a minor who had admitted drinking alcohol at the Annina residence. When the officers went to Annina's residence to confront her with this information, Annina began screaming, slammed the residence door, and refused to allow the officers to enter the residence.

¶ 4. The officers secured a search warrant and returned to search the residence. Umhoefer shouted to Annina through the front door that there was a warrant to search the house. Annina opened the front door and Umhoefer repeated that she had a search warrant. Annina then attempted to shut the door on the entering officers. As Umhoefer pushed to open the door, Annina pushed to close it. Eventually, Umhoefer was able to force the door open enough to enter and place a handcuff on Annina's left wrist.

¶ 5. Umhoefer instructed Annina to put her hands behind her back and Annina began screaming at the officers and repeatedly attempting to pull her cuffed hand away from the officers. The officers began to perform their search, but Annina became "uncontrollable," and they "decided it would be best to take her out of the residence so that they could complete their investigation inside."

¶ 6. At that point, the officers informed Annina that they were going to take her to the Mequon police department for processing. Annina went to her knees, screaming, and the officers tried to calm her down. When the officers tried to pick her up she began kicking at them. The officers eventually had to carry Annina from the residence. The State charged Annina with disorderly conduct and resisting an officer.

¶ 7. On April 26, 2004, the circuit court held that the search warrant for the Annina residence was invalid. The court refused, however, to dismiss the resisting and disorderly conduct charges because the charges were "not a variety of charges [where] the evidence would have to be suppressed because of the invalidity of the warrant, they're simply the outgrowth of the confrontation that allegedly occurred between [Annina] and the officers at the door." Annina moved for reconsideration, which was denied. Subsequently, Annina entered an *Alford* plea to the charge of resisting an officer, and the charge of disorderly conduct was dismissed and read in for sentencing purposes. At the plea hearing, the circuit court engaged in the following colloquy with Annina:

> Court: [Y]ou're giving up your right to require the state to prove, by evidence beyond a reasonable doubt to a jury of 12, all 12 agreeing on your guilt by that standard . . . that you knowingly resisted a police officer, that you knew that person to be a police officer, and you knew that person to be a police officer acting in their official capacity and with lawful authority, or you should have known that. Do you understand that's what they would have to prove?
>
> Annina: Yes, I do, your Honor.
>
> . . . .

603

Court: And do you and Mrs. Annina stipulate to the Court considering the probable cause section of the complaint as a basis for this charge?

Counsel: Your honor . . . [w]e'd only ask that the factual basis include one other factor, which is that consistent with the Court, this case history, that there was a search warrant the Court found was executed without a sworn oath, and the Court so found that.

. . . .

Court: Correct. Okay. I'll accept the defendant's plea . . . . Upon a reading of the probable cause section of the complaint, which has also in great detail been before the Court previously on motions, the Court finds that . . . a substantial probability exists that the defendant would have been convicted of the offense alleged therein . . . .

¶ 8. Subsequently, Annina moved the court to vacate her plea and dismiss the charge of resisting an officer. The circuit court denied Annina's motion and she appeals.

## DISCUSSION

¶ 9. Annina seeks to withdraw her *Alford* plea on the grounds that a manifest injustice has occurred. "Withdrawal of a plea following sentencing is not allowed unless it is necessary to correct a manifest injustice." *State v. Smith*, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996). Specifically, Annina argues that the trial court failed to establish a sufficient factual basis for her plea. A circuit court's failure "to establish a sufficient factual basis that the defendant committed the offense to which he or she [pled]" is an example of a manifest

injustice. *Id.* With respect to an Alford plea, "the factual basis requirement is only satisfied if there is strong proof of guilt as to each element of the crime." *Id.* at 28.[3] Determining the existence of a sufficient factual basis lies within the discretion of the trial court and this determination will not be overturned unless it is clearly erroneous. *See id.* at 25.

¶ 10.  Annina contends that because the search warrant that the officers were acting upon was subsequently invalidated, the officers were not acting with lawful authority in entering her home. The relevant statute states, "Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and *with lawful authority,* is guilty of a Class A misdemeanor." WIS. STAT. § 946.41(1) (emphasis added). Thus, her argument goes, she cannot be guilty of resisting an officer.

¶ 11.  The State concedes that "if Annina's resistance was only to the execution of an invalid search warrant, there is no factual basis for her *Alford* plea."[4] It counters, however, that Annina's arrest for resisting an officer stems from her disorderly conduct and was therefore brought about with lawful authority.[5] The

---

[3] "*Alford* pleas are treated differently from guilty pleas in regard to the factual basis requirement because *Alford* pleas allow a defendant to be convicted of a crime even though the defendant continues to assert his [or her] innocence." *State v. Smith*, 202 Wis. 2d 21, 27, 549 N.W.2d 232 (1996).

[4] We are not bound by the concession of a party. *See Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 178–80, 456 N.W.2d 788 (1990). We take note of the State's concession but neither accept nor reject its legal conclusion because our analysis resolves the appeal on other grounds.

[5] The disorderly conduct statute provides: "Whoever, in a public or private place, engages in violent, abusive, indecent,

605

State relies on the proposition that "the police may legally arrest a defendant for a new, distinct crime, even if the new crime is in response to police misconduct and causally connected thereto." *See United States v. Bailey*, 691 F.2d 1009, 1017–18 (11th Cir. 1982). Accordingly, the State asserts, the "lawful authority" element of the crime of resisting arrest is sufficiently supported in the record.

¶ 12.   In rejecting Annina's motion to withdraw her plea, the circuit court identified the "central issue" as whether a "police officer who is unlawfully upon [the] premises still retains 'lawful authority' to make an arrest." Relying in part on the principles espoused in *State v. Hobson*, 218 Wis. 2d 350, 577 N.W.2d 825 (1998), the circuit court held:

> It has been and continues to be this Court's opinion that a police officer who is upon premises pursuant to a search warrant, later determined to be defective, does not necessarily lose his or her authority to arrest. While it is true that a person whose premises have been entered unlawfully may have the right to sanctions such as suppression of evidence or civil remedies, this does not necessarily mean that a police officer witnessing what he or she believes to be a crime loses lawful authority to make an arrest.

¶ 13.   On a motion to withdraw a plea, a court may look at the totality of the circumstances to determine whether the defendant has accepted the factual basis presented underlying the guilty plea. *State v. Thomas*, 2000 WI 13, ¶ 23, 232 Wis. 2d 714, 605 N.W.2d 836 (citing *White v. State*, 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978) (for the proposition that when a court under-

profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." WIS. STAT. § 947.01.

takes a review for manifest injustice, it "may consider the whole record since the issue is no longer whether the guilty plea should have been accepted, but rather whether there was an abuse of discretion in the trial court's denial of the motion to withdraw"). Here, the record supports the trial court's determination.

¶ 14. At the motion hearing on April 26, 2004, the circuit court concluded that the search warrant was invalid but that the disorderly conduct and resisting an officer charges should not be dismissed:

> [N]otwithstanding the invalid warrant, the offenses alleged here are not furnishing and not possession of controlled substances [or] contributing to the delinquency of a minor . . . they're simply the outgrowth of the confrontation that allegedly occurred between the defendant and the officers at the door.

> I don't think [Annina is] entitled to a dismissal of [the obstruction and resisting] charges. She is entitled to suppression of all evidence that was seized pursuant to the investigation that the police undertook, and that is ordered at this time.

¶ 15. Annina subsequently filed a motion in limine, seeking to exclude all evidence seized, seen, or heard during the execution of the invalid search warrant. At the motion hearing on May 26, the circuit court was satisfied that the conduct supporting the disorderly conduct and resisting charges was distinct. It refused to suppress any evidence "connected with the confrontation that allegedly took place between the defendant and the police."

¶ 16. During the hearing, the circuit court specifically asked the State what conduct justified the disorderly conduct arrest. The court indicated that it had already read the probable cause provision in the complaint. This included allegations that Annina attempted

to shut the door on the officers, her left wrist was cuffed by Umhoefer, she began "screaming loudly and hysterically" at the officers and repeatedly attempting to pull her cuffed hand away from the officers, and she started "uncontrollable yelling and screaming and going towards the officers." In addition to these allegations, the State offered a portion of the police report, reading into the record as follows:

> [T]he officer's report goes on to say, "During the investigation in question of the above subjects they had found a number of subjects in the residence, Anna Annina was present in the same general area ... [she] repeatedly had outbursts ... where she got up from her chair yelling, these outbursts mostly consisted of Annina making defensive statements denying knowledge of events and telling officers they had no right to be doing [the] investigation."
>
> It says "due to Annina's behavior, Sergeant Gieske and I decided to remove Annina [from] the residence and began our booking process. [Officers] advised Anna Annina she was going to be transported to the Mequon Police Department for booking" for disorderly conduct and obstructing, resistance to officer."
>
> Now, they must have unhandcuffed her. "At this time I placed handcuffs on Annina who struggled and began to cry uncontrollably. Once the handcuffs were placed on Annina, she went to the ground on her knees" and was ... screaming, hysterical high-pitched voice ....
>
> Another officer then got there .... That's when [Annina] was ... using her legs and began kicking [her legs] ... and then she was taken out to the back seat of the squad.

The court confirmed that the events took place in a "fairly short interval," but that the State was relying on

a course of conduct that "more than what happened at the front door."

¶ 17.  The record supports the circuit court's determination that there was a sufficient factual basis for the plea, including the element of "lawful authority." We hold that the circuit court properly exercised its discretion when it found a factual basis for the crime of resisting an officer. The court insisted that the State enumerate the facts that supported the charge, it questioned the State on the timing of the events, and it distinguished between the invalid search warrant directed at alleged underage drinking and the conduct supporting the resisting charge. We conclude that the circuit court fulfilled the mandate of Wis. Stat. § 971.08(1)(b) when it determined that a factual basis for Annina's plea did exist.

¶ 18.  As a final observation, we note Annina's objection to the circuit court's partial reliance on *Hobson* in its decision. Annina argues that *Hobson* is inapplicable and her point is well-taken. In *Hobson*, our supreme court considered whether public policy would be best served by abrogating the common law privilege to forcibly resist unlawful arrest, in the absence of unreasonable force. *See Hobson*, 218 Wis. 2d at 358. The court concluded that it would and quoted with approval the reasoning in *Miller v. State*, 462 P.2d 421 (Alaska 1969):

> To us the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter

seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders . . . . We hold that a private citizen may not use force to resist peaceful arrest by one he knows or has good reason to believe is an authorized peace officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion.

*Hobson*, 218 Wis. 2d at 380. However, by its very terms, Wis. Stat. § 946.41(1) requires an officer to have "lawful authority" before a citizen can be charged with resisting an officer. Here, because Annina's disorderly conduct was a new and distinct crime giving the officers the lawful authority to arrest, we need not reconcile *Hobson* with § 946.41(1). That is an analysis for another day.

## CONCLUSION

¶ 19.   We conclude that when the officers were met with disorderly conduct during the execution of the search warrant, they possessed the lawful authority to arrest notwithstanding the invalid warrant. As a result, there is a factual basis in the record to support the charge of resisting an officer. Disorderly conduct and resisting the officers constituted "new, distinct crime[s]," despite the original illegality. *See Bailey*, 691 F.2d at 1017–18. The circuit court correctly determined that the officers were acting in their official capacity and with lawful authority when they arrested Annina for resisting an officer. The court properly denied Annina's motion to withdraw her plea.

*By the Court.*—Judgment and order affirmed.