# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 10, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2019AP81-CR**

Cir. Ct. No.  2015CM62

## STATE OF WISCONSIN

## IN COURT OF APPEALS
## DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

COREY STAUNER,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Marathon County:  GREGORY B. HUBER, Judge.  *Affirmed*.

¶1    SEIDL, J.[1]    Corey Stauner appeals a judgment, entered upon a jury's verdict, convicting him of two counts of misdemeanor bail jumping.  He also appeals an order denying him postconviction relief.  Stauner argues that there

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

was insufficient evidence to convict him on one of the bail jumping counts, which was based upon the State's allegation that he violated the terms of a misdemeanor bond by committing the new crime of resisting an officer while subject to the bond. We affirm.

## BACKGROUND

¶2 The criminal complaint in this case alleged that on January 8, 2015, Wausau Police Department officers Jacob Chittum and Garrett Carr conducted a traffic stop of a vehicle being driven by Stauner. Based on the interaction between the officers and Stauner, which we more fully detail below, the State charged Stauner with a single count of resisting an officer and two counts of misdemeanor bail jumping.

¶3 The bail jumping charges were based on alleged violations of two misdemeanor bond conditions that Stauner was subject to at the time of the traffic stop. Specifically, in Dunn County case No. 2015CM62, Stauner's misdemeanor bond required that he consume "no alcohol or illegal drugs" and that he "shall not commit any crime."[2]

¶4 At trial, officer Chittum testified that he initiated the traffic stop of Stauner's vehicle because he observed the vehicle driving in the dark without its headlights on. He stated that after making initial contact with Stauner, he returned to his squad car and performed a records check, which indicated that Stauner "had

---

[2] On appeal, Stauner does not raise any challenge to his conviction for the misdemeanor bail jumping count that corresponded to the "no alcohol" bond condition. Consequently, we will not further discuss that count in this opinion.

a warrant." Chittum stated that the Wausau Police Department procedures in place at the time of the traffic stop mandated arrests for all open warrants.

¶5 When Chittum returned to Stauner's car, he did not initially inform Stauner that he was under arrest for the open warrant. Instead, he decided to have Stauner perform field sobriety tests, which Stauner passed. After the tests, Chittum informed Stauner "that he did have a valid warrant out for his arrest, and I then placed him into custody." When Chittum began performing a search incident to the arrest, Stauner "kind of turned away and started walking away from Officer Carr initially [and Carr] had to direct him to face the squad car." In addition, Stauner "made fists with his hands" and began "yelling very loudly, cursing, [and] calling us names."

¶6 Chittum stated that after the search was complete, he began "escorting Mr. Stauner to the back of my squad car," at which point Stauner "then turned away. He became rigid and tense and he turned away." Chittum further explained this action, telling the jury that "Stauner, for the second time, tried pulling away from" him and Carr.[3]

¶7 Carr gave testimony largely similar to that of Chittum. Namely, he testified that Stauner was "initially compliant," but that "his demeanor changed to a more aggressive" one after being informed he was being placed under arrest. Carr stated that the "first occasion" where Stauner became uncooperative occurred when Stauner "did try to walk away from Officer Chittum [and] I had to direct

---

[3] We note that a video recording of this encounter was played for the jury. This recording is included in the appellate record, but as Stauner does not raise any arguments concerning the video's contents, we will not further discuss it.

him to come back in front of the squad." Carr explained that the decision to redirect Stauner on this occasion was made "for his safety and for our safety."

¶8 Carr also testified that after this first redirect of Stauner occurred, Carr walked away from Chittum and Stauner to confront a third party who was walking toward the scene. Then, when Carr turned back toward the squad, he "observed [Stauner] and Officer Chittum near the roadway on the opposite side of his squad, and [Stauner] had the motion that I saw appeared that he was trying to pull away from Officer Chittum." Finally, Carr acknowledged that at some point during the arrest Stauner told him that he did not believe he had done anything that would have supported the issuance of a warrant for his arrest.

¶9 Stauner chose not to testify in his own defense. The jury ultimately acquitted Stauner on the charge of resisting an officer. Nonetheless, it convicted him of the bail jumping charge that was based upon him committing the crime of resisting an officer. Stauner filed a postconviction motion, seeking dismissal of the bail jumping charge on the ground that there was insufficient evidence to support the jury's verdict. The circuit court denied the motion, and Stauner now appeals.

**DISCUSSION**

¶10 On appeal, Stauner argues there was insufficient evidence to convict him of the bail jumping charge. As a threshold matter, however, we must clarify the scope of our review. Both parties make much of the fact that the jury returned what are, on their face, inconsistent verdicts—that is, the jury acquitted Stauner of the resisting an officer charge yet it convicted him of the bail jumping charge that was based on his commission of that crime. Neither party, however,

4

acknowledges the case which controls our review in such a situation, *State v. Rice*, 2008 WI App 10, 307 Wis. 2d 335, 743 N.W.2d 517 (2007).

¶11   In *Rice*, as here, we reviewed a case where a jury convicted a defendant of bail jumping despite acquitting him of the charge upon which the bail jumping was based. *See id.*, ¶25. In doing so, we acknowledged that the verdicts were inconsistent. *Id.*, ¶27. We held, however, that such inconsistency was "permissible," and therefore "whether the evidence is sufficient to support a conviction is decided independently of jury verdicts on related charges." *Id.*, ¶¶2, 27. Consequently, when considering whether the evidence was sufficient to support Stauner's conviction on the bail jumping charge, we will not further discuss the jury's inconsistent verdict on the resisting an officer charge.

¶12   Whether the evidence was sufficient to support a conviction is a question of law that we review de novo. *See State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. Our review is "highly deferential" to the jury. *See State v. Rowan*, 2012 WI 60, ¶5, 341 Wis. 2d 281, 814 N.W.2d 854. Applying that deferential standard, we will affirm "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably," could have reached the result being appealed. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶13   In order to convict Stauner on the bail jumping charge, the jury had to find all the elements of resisting an officer and the additional elements of bail jumping. *See Rice*, 307 Wis. 2d 335, ¶27. As Stauner raises arguments concerning the sufficiency of the evidence only in regard to two of the elements of resisting an officer, we confine our discussion to those two elements.

¶14     The first element Stauner challenges required the State to prove that Stauner "resisted an officer." *See* WIS JI—CRIMINAL 1765. "'Resist' means 'to oppose by direct, active and quasi forcible means' and does not include passive or indirect methods of impeding [an] officer's performance of duty." **State v. Dearborn**, 2008 WI App 131, ¶26, 313 Wis. 2d 767, 758 N.W.2d 463, *aff'd*, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97 (citing **State v. Welch**, 37 Wis. 196, 201 (1875)). Further, a defendant may resist an officer without using "actual force or even [committing] a common assault upon the officer." **Welch**, 37 Wis. at 202.

¶15     Stauner's argument concerning the sufficiency of the evidence to satisfy the "resist" element ignores our standard of review. For example, he argues that Stauner's cursing at the officers does not constitute opposing them by forcible means and that because officer Carr testified on cross-examination that the "first redirect" of Stauner was done "for his safety and for our safety," no reasonable jury could conclude that Stauner resisted the officers at that time. Even accepting these arguments, we conclude that the uncontroverted testimony of both officers Chittum and Carr that Stauner subsequently attempted to "pull away" from Chittum provided sufficient evidence upon which the jury could find that Stauner opposed an officer by forcible means.

¶16     The second element Stauner challenges required the State to prove that Stauner "knew that [Chittum] was an officer acting in an official capacity and with lawful authority and that [Stauner] knew [his] conduct would resist the officer." *See* WIS JI—CRIMINAL 1765. Stauner contends the evidence at trial was insufficient to prove this element because "[g]iven what the officers testified what Appellant said"—that is, that Stauner stated at some point during the arrest that he did not believe he had done anything that would have supported the issuance of a

warrant for his arrest—there was "no evidence" that Stauner knew the officers were acting with lawful authority.

¶17     We disagree.  In determining whether the evidence establishes that the defendant knew an officer possessed lawful authority, we determine whether a jury, acting reasonably and weighing the totality of circumstances, including what the officer and defendant said or did, could be convinced that the defendant knew the officer was acting with lawful authority.  *State v. Lossman*, 118 Wis. 2d 526, 544, 348 N.W.2d 159 (1984).  A jury may utilize personal experience and common knowledge to find that a reasonable person would believe an officer was acting with lawful authority.  *Id.*

¶18     As with his previous argument, Stauner's argument regarding the "lawful authority" element ignores our standard of review.  Here, it is undisputed that officer Chittum was driving a marked patrol car, that he initiated the traffic stop by activating his squad car's flashing lights, and that he was dressed in full uniform.  These factors were all present in *Lossman*, and our supreme court viewed them as circumstances which would allow a jury to conclude that a reasonable person would believe an officer was acting with lawful authority.  *See id.* at 544-45.

¶19     As such, the jury in this case was well within its province to infer from the totality of the evidence that Stauner knew there was a valid warrant for his arrest, notwithstanding his self-serving statement during the arrest that he did not think he had done anything to support the issuance of an arrest warrant.  "It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Poellinger*, 153 Wis. 2d at 506.  We

therefore reject Stauner's claim that the evidence at trial was insufficient to prove he knew that Chittum was acting with lawful authority when Chittum placed him under arrest.[4]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] Although we conclude that there was sufficient evidence for the jury to infer that Stauner actually knew there was a valid warrant for his arrest, we observe that the underlying premise of Stauner's argument concerning the "lawful authority" element is infirm. To explain, we have held that when an individual resists an officer who is executing a warrant (which is subsequently determined to have been invalid), the officer "possessed the lawful authority to arrest notwithstanding the invalid warrant." *See State v. Annina*, 2006 WI App 202, ¶19, 296 Wis. 2d 599, 723 N.W.2d 708. Thus, even if Stauner actually believed that the warrant for his arrest was invalid, that belief would not support a conclusion that the officers lacked the lawful authority to act upon that warrant—the actual existence of which (invalid or not) Stauner does not dispute on appeal.