COURT OF APPEALS
DECISION
DATED AND FILED

January 14, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP144-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF1501

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LORENZO ESTRADA-ROSALES,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: JOHN P. ZAKOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lorenzo Estrada-Rosales appeals from a judgment, entered upon his ***Alford***[1] plea, convicting him of first-degree sexual assault of a child who had not attained the age of thirteen. He also appeals from an order denying his postconviction motion.[2] On appeal, Estrada-Rosales contends that: he did not knowingly, intelligently, and voluntarily enter his plea because he misunderstood the deportation consequences of conviction; his trial counsel was ineffective for failing to correct this misunderstanding; and the circuit court erred by failing to establish the proof of guilt required to support his ***Alford*** plea. For the reasons that follow, we affirm.

## BACKGROUND

¶2 In October 2017, the State charged Estrada-Rosales with two counts. In Count 1, the State charged Estrada-Rosales with repeated sexual assault of the same child, Molly.[3] In Count 2, the State charged Estrada-Rosales with first-degree sexual assault of Sara, a child who had not attained the age of thirteen.

---

[1] *See **North Carolina v. Alford**,* 400 U.S. 25 (1970).

[2] In case No. 2020AP2019-W, Estrada-Rosales filed a petition for a writ of habeas corpus alleging that he was denied the right to effective assistance of counsel when his trial counsel failed to timely file a Notice of Intent to Pursue Postconviction Relief in this case. Estrada-Rosales therefore requested an extension of the time to file a Notice of Intent to Pursue Postconviction Relief. The State did not object to Estrada-Rosales's proposed relief, and we granted the petition. Estrada-Rosales then filed a Notice of Intent to Pursue Postconviction Relief, and this appeal followed.

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms instead of the victims' names. The State refers to the victims as "Molly" and "Sara," and we do the same.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

¶3     Estrada-Rosales, who was born in Nicaragua and is a native Spanish speaker, claimed to have limited English proficiency throughout the circuit court proceedings.  Accordingly, the court provided him with an interpreter at each hearing.  Ultimately, the parties reached a plea agreement, and, as part of that agreement, Estrada-Rosales agreed to enter an *Alford* plea to Count 2.  In return, the State agreed to dismiss and read in Count 1 and recommend that the court impose a sentence consisting of no more than fifteen years' initial confinement followed by ten years' extended supervision.

¶4     At a plea hearing, Estrada-Rosales's trial counsel submitted several documents, including a completed plea questionnaire and waiver of rights form and the relevant pattern jury instruction.  *See* WIS JI—CRIMINAL 2102E (2015).  Both of these documents were in English.  The plea questionnaire and waiver of rights form stated that Estrada-Rosales was forty-two years old, had completed three years of schooling, and did not understand the English language.

¶5     Trial counsel informed the circuit court that she did not complete the Spanish version of the plea questionnaire and waiver of rights form with Estrada-Rosales.  However, trial counsel also submitted an eight-page document, that was in both English and Spanish, and told the court that she reviewed it with Estrada-Rosales.  According to trial counsel, the Spanish portions of this document were obtained using Google Translate.  Each page was initialed by Estrada-Rosales.  Trial counsel described this document as containing a "narrative first, page one, and then the substance of the remaining seven pages … is information from" the plea questionnaire and waiver of rights form and the pattern jury instruction.

¶6      The narrative portion of the document included an explanation of an *Alford* plea, a statement that Estrada-Rosales met with his trial counsel and an interpreter, and a statement that Estrada-Rosales "reviewed the [plea] form and the attachments" with his trial counsel and the interpreter. That portion also included a statement that Estrada-Rosales "understood everything contained in the documents, and any questions that [he] had were answered."

¶7      The remaining seven pages described, in relevant part: the constitutional rights that Estrada-Rosales was giving up by entering an *Alford* plea; the elements for Count 2; the maximum potential punishment for Count 2; the impact of the read-in offense on Estrada-Rosales's sentencing; that the circuit court would rely "upon the facts in the criminal complaint and/or the preliminary examination"; that "[n]o promises ha[d] been made to [Estrada-Rosales] other than those contained in the plea agreement"; the plea agreement itself; and a statement on the deportation consequences of conviction. Trial counsel stated that she had met with Estrada-Rosales twice in person to discuss his plea—including the aforementioned submitted forms—and that an interpreter had been present at each of the meetings.

¶8      The circuit court then conducted a plea colloquy with Estrada-Rosales with the assistance of an interpreter. At multiple points during the colloquy, Estrada-Rosales raised the issue of deportation. The first instance occurred after the court asked Estrada-Rosales if he had enough time to go "over all of this information with" his trial counsel. Estrada-Rosales responded, "I reviewed all the information but what … got my attention the most was that I was promised that if I signed I would be deported and that's why I signed it."

¶9 Later during the colloquy, the circuit court asked Estrada-Rosales if he understood that he was giving up his constitutional rights. In response, Estrada-Rosales stated that his trial counsel had "explained to me that I am giving up the trial and all of this, always with an eye toward me going back to my country." Estrada-Rosales added, "If there is the condition … that I will go back to my country[,] I accept not having a trial. That's the basis on which I sign." When asked if he understood the meaning of an *Alford* plea, Estrada-Rosales responded, "What I understood about the *Alford* plea was that it would reduce everything. They would withdraw all the charges and turn me over to immigration. That's what I understood and that's why I signed and why I'm here today making this plea."

¶10 Following Estrada-Rosales's statements surrounding deportation, and at the circuit court's suggestion, the parties went off the record, and Estrada-Rosales and his trial counsel had a private discussion. After the private discussion, the parties went back on the record, and the circuit court again asked Estrada-Rosales if he understood the meaning of an *Alford* plea, to which Estrada-Rosales stated, "If they don't have evidence that I even touched her that's what I don't like, that they're saying they have evidence." The court responded by explaining that by entering an *Alford* plea, Estrada-Rosales would maintain his claim of innocence but recognize that "if we had a trial it is most likely that a jury would return with a guilty verdict." Estrada-Rosales stated that he understood the court's explanation.

¶11 The circuit court also asked Estrada-Rosales if anyone had made any threats or promises to him in order to obtain his plea. Estrada-Rosales responded by again raising the issue of deportation, stating that the "only promise is the one that I signed for. The promise that this would be minimized and I would be

5

deported." The court replied, "In other words—and that's part of the plea negotiations. Is that right?" Estrada-Rosales answered, "Yes."

¶12 The circuit court asked Estrada-Rosales's trial counsel if in accepting the *Alford* plea it could rely on the probable cause portion of the criminal complaint, to which counsel responded in the affirmative. Later in the hearing, the court relied on trial counsel's response to find that a factual basis existed for Estrada-Rosales's plea. The court also found that Estrada-Rosales was knowingly, intelligently, and voluntarily entering his plea. Accordingly, the court found Estrada-Rosales guilty of Count 2 and dismissed and read in Count 1. The court later sentenced Estrada-Rosales to sixteen years' initial confinement followed by eight years' extended supervision.

¶13 Thereafter, Estrada-Rosales filed a postconviction motion to withdraw his *Alford* plea, raising three issues. First, Estrada-Rosales argued that he did not knowingly, intelligently, and voluntarily enter his plea because he misunderstood the deportation consequences of his plea.[4] In his postconviction motion, Estrada-Rosales claimed he did not understand that "he could spend up to [forty] years in prison … and would not be deported until after the imprisonment was complete." Estrada-Rosales also asserted that he was promised deportation prior to his sentence being carried out. Second, Estrada-Rosales alleged that his trial counsel was ineffective by failing to "ensure that he understood the potential

---

[4] Estrada-Rosales also argued that he did not knowingly, intelligently, and voluntarily enter his plea because the circuit court failed to inform him of the maximum potential penalty he faced upon conviction. The court denied this claim in a written order. Estrada-Rosales does not appear to challenge the court's order in this respect, and we deem this issue abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

consequences" of his plea. Third, Estrada-Rosales argued that the circuit court erred by accepting his *Alford* plea without adequately establishing that "strong proof of guilt" existed. *See State v. Nash*, 2020 WI 85, ¶35, 394 Wis. 2d 238, 951 N.W.2d 404 (citation omitted).

¶14 The circuit court held an evidentiary hearing on Estrada-Rosales's postconviction motion at which Estrada-Rosales's trial counsel testified. She stated that she could not recall who the interpreter was for either of her plea-related meetings with Estrada-Rosales but that it would have been one of two individuals in her office—a paralegal or another individual who "work[ed] in an office environment." Trial counsel testified that neither of the individuals were "court-certified" interpreters but that both spoke Spanish as their first language. *See* WIS. STAT. § 885.38. She further testified that during her second meeting with Estrada-Rosales to go through the plea forms, she read the forms in English, and the interpreter repeated trial counsel's statements to Estrada-Rosales in Spanish. She also explained that she had discussed with Estrada-Rosales the general process of criminal proceedings, including what occurs at a criminal trial, how a jury is selected, and how the parties question witnesses. Trial counsel testified that she discussed with Estrada-Rosales the facts of the case and the "hurdles" that a trial would pose.

¶15 Trial counsel stated that she remembered from the meetings that Estrada-Rosales expressed a desire to return to Nicaragua and had asked her "if he pled and was sentenced if he would be deported." However, trial counsel informed Estrada-Rosales that she "had no idea what would happen after he signed the [plea] form[s] and went to prison as far as once he was sentenced because [she did not] handle things after … sentencing." She added that "at no point did [she] tell him if he pled he would be deported." When asked if she would have

informed Estrada-Rosales that he needed to serve his sentence before being deported, trial counsel stated that her understanding is that a defendant must serve a sentence prior to deportation, "so that's what [Estrada-Rosales] would have been told." Trial counsel testified that she did not have any concerns about Estrada-Rosales understanding the plea agreement or the consequences of his plea.

¶16 When asked about Estrada-Rosales's statements regarding deportation at the plea hearing, trial counsel testified that she would never have promised him that he would be deported prior to serving his sentence. Trial counsel testified that she believed Estrada-Rosales "was attempting to divert or derail what was going on" at the plea hearing "and lay the foundation for an appeal if something went wrong." She stated that she did not ask for a second recess during the plea hearing after Estrada-Rosales made an additional statement about deportation because she did not "necessarily think it was a misunderstanding. There was a discussion of him being deported once his sentence was served, whatever sentence that was."

¶17 Estrada-Rosales also testified at the evidentiary hearing, again through an interpreter. He testified that he could "[n]ow … speak … a little" English, but he "only knew some words" at the time he was convicted. With respect to his trial counsel's assertions about what had occurred prior to his plea, Estrada-Rosales stated that she "promised [him] that if [he] signed [he] would get deported." Additionally, Estrada-Rosales stated that his trial counsel told him that if he entered the plea, he would "be able to go to" his "country to see" his family, but if he did not sign, he could "forget about" his family and would "never see them again." The parties appeared to agree that Estrada-Rosales had no prior criminal record in the United States, although he had previously been deported twice.

¶18     The State called Estrada-Rosales's ex-girlfriend—the victims' grandmother—to testify at the hearing.  She stated that she met Estrada-Rosales in 2008 and that they began dating in 2011.  According to the ex-girlfriend, Estrada-Rosales "spoke very good English" at the time of his arrest in October 2017, and he would "go to bars all the time and talk to everybody."

¶19     Ultimately, the circuit court issued a written decision denying Estrada-Rosales's postconviction motion for plea withdrawal.  The court found that Estrada-Rosales "had a better understanding of the English language than [he] appeared [to have] at the time of the plea hearing."  According to the court, "[c]oupled with the efforts made by [Estrada-Rosales's trial counsel] to have the plea form and its contents translated into Spanish and to have [the] attachments translated into Spanish, it is clear … [Estrada-Rosales] understood the contents of the plea form[s]," including that he could face a substantial period of initial incarceration.

¶20     The circuit court further found Estrada-Rosales's trial counsel credible and that she had, indeed, not informed Estrada-Rosales that he would be deported prior to him serving a prison sentence.  Moreover, the court found that Estrada-Rosales chose to enter into an *Alford* plea in the hope of receiving a time-served sentence so that he would be immediately deported.  The court stated that Estrada-Rosales made the statements regarding deportation at the plea hearing "as a means of attempting to be in control by dictating the terms of his sentence." Furthermore, the court found that Estrada-Rosales was claiming that he did not know the consequences of his plea following his sentencing because he was "obviously unhappy with the results."  The court characterized Estrada-Rosales's claim, that he thought he would be immediately deported upon his plea, as "Monday morning quarterbacking."  As such, the court determined that

9

Estrada-Rosales knowingly, intelligently, and voluntarily entered into his plea and that his trial counsel was not deficient.

¶21     With respect to the factual basis to support Estrada-Rosales's *Alford* plea, the circuit court noted that Estrada-Rosales waived his preliminary hearing, so the only evidence of guilt before the court was the allegations located in the criminal complaint. The court described the complaint as containing a "significant amount of information in the probable cause section," "including reference to" the victims' forensic interviews "in which they described where and how Estrada-Rosales was inappropriately touching them." Moreover, the court determined that "in taking [the] *Alford* plea," it was not required "to regurgitate the criminal complaint on the record." Therefore, the court concluded that it adequately determined at the plea hearing that there was "strong proof of guilt" to support Estrada-Rosales's *Alford* plea, and it denied his motion to withdraw his plea. *See Nash*, 394 Wis. 2d 238, ¶35 (citation omitted). Estrada-Rosales now appeals.

## DISCUSSION

¶22     When a defendant seeks to withdraw a plea after sentencing, the defendant "carries the heavy burden of establishing by, clear and convincing evidence," that allowing plea withdrawal "is necessary to correct a manifest injustice." *Nash*, 394 Wis. 2d 238, ¶32 (citation omitted). This standard of proof is higher than the standard a defendant must meet to withdraw a plea prior to sentencing. *Id.*

## I. Knowing, intelligent, and voluntary plea

¶23    Estrada-Rosales first contends that his plea was not knowing, voluntary, and intelligent because he did not understand the actual sentencing consequences he faced upon conviction, and he is therefore, entitled to withdraw his plea based upon a manifest injustice. Estrada-Rosales argues that he entered his plea based on the promise of deportation prior to prison, and his misunderstanding that he would be deported prior to serving a prison sentence rendered his plea involuntary.

¶24    One way a defendant can demonstrate manifest injustice is to prove that his or her plea was not entered knowingly, intelligently, and voluntarily due to "some factor extrinsic to the plea colloquy." *State v. Howell*, 2007 WI 75, ¶74, 301 Wis. 2d 350, 734 N.W.2d 48. Whether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact. *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906. That is, we review the circuit court's findings of historical fact under the clearly erroneous standard of review, and "we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Id.* A finding of fact is clearly erroneous when it "is against the great weight and clear preponderance of the evidence. Under the clearly erroneous standard, 'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'" *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 (citation omitted). "[W]e search the record not for evidence opposing the circuit court's decision, but for evidence supporting it." *Id.*

¶25 On appeal, Estrada-Rosales does not dispute the circuit court's finding that his trial counsel did not misinform him about the deportation consequences of his plea. Rather, Estrada-Rosales argues that while "counsel did not intend to promise anything," Estrada-Rosales "perceived" his discussions with counsel "as a promise" of deportation. Accordingly, Estrada-Rosales asserts that he did not knowingly, intelligently, and voluntarily enter his plea because he "believed that it was certain … he would be turned over to immigration and deported" prior to serving any sentence in the United States. In support of this position, Estrada-Rosales cites his statements made during the plea hearing regarding deportation, a statement regarding deportation made to the author of a presentence investigation report, his limited understanding of the English language and the criminal justice system, and the fact that his trial counsel used a noncertified interpreter at the plea meetings.

¶26 We assume without deciding that Estrada-Rosales is correct in asserting that immigration officials are precluded from removing from the United States an "alien" who is sentenced to prison until after that individual is released from incarceration. Likewise, we assume without deciding that a defendant's genuine, but incorrect, belief that he or she would be immediately deported upon conviction prior to serving an imposed prison term can make a plea infirm. *See generally **Padilla v. Kentucky***, 559 U.S. 356, 366-74 (2010).

¶27 Even with these assumptions in mind, we must affirm the circuit court's order denying Estrada-Rosales's plea withdrawal motion. The State aptly postulates that Estrada-Rosales's "argument rests on the acceptance of his assertions about what he understood and what he believed when he entered his plea." These issues pose questions of fact, and we are bound by the circuit court's factual findings unless we deem them clearly erroneous.

¶28    The circuit court held an evidentiary hearing, after which it rejected Estrada-Rosales's claims about what he in fact understood and believed at the time he entered the plea.    Estrada-Rosales testified that the only basis for his misunderstanding of the deportation consequences of his plea was his trial counsel's alleged misinformation.    He stated trial counsel told him that if he entered the plea, he would "be able to go to" his "country to see" his family, but if he did not sign, he could "forget about" his family and would "never see them again."    However, the court found that trial counsel did not misinform Estrada-Rosales of the deportation consequences of his plea, and Estrada-Rosales does not attempt to argue that that finding is clearly erroneous.    The court's finding in that regard precludes Estrada-Rosales from claiming on appeal that he was promised and believed that he would be deported prior to serving his prison sentence if he took the plea.

¶29    The circuit court's other findings also support the determination that Estrada-Rosales knew he would not be immediately deported until after he served any imposed prison sentence.  For example, the court found, consistent with the testimony of Estrada-Rosales's ex-girlfriend, that Estrada-Rosales "obvious[ly] … had a better understanding of the English language than it appeared at the time of the plea hearing."  Estrada-Rosales's English-speaking capabilities, coupled with the steps his trial counsel took to discuss the plea agreement with him, led the court to find that Estrada-Rosales knew that he could receive and serve a substantial period of initial incarceration upon conviction.

¶30    None of the plea documents suggested that Estrada-Rosales would be deported immediately upon conviction.  To the contrary, the plea forms provided, in both English and Spanish, that Estrada-Rosales could face a maximum bifurcated sentence of forty years' initial confinement followed by

twenty years' extended supervision. Estrada-Rosales's trial counsel testified that she explained these legal terms to Estrada-Rosales with the interpreter. Estrada-Rosales does not explain how he could have knowledge of the potential imprisonment time if convicted while also maintaining the belief that he would immediately return to Nicaragua regardless of whether he received a prison sentence.

¶31 Moreover, the circuit court found that Estrada-Rosales's statements at the plea hearing regarding deportation were made in an effort to control the sentencing—i.e., to influence the court's decision by expressing his desire to avoid a trial, obtain a time-served sentence, and return to Nicaragua—and were not statements of genuine confusion. This finding is supported by, among other evidence, the testimony of Estrada-Rosales's trial counsel in which she stated that she did not believe Estrada-Rosales had a misunderstanding about the plea or its consequences. The finding is further supported by Estrada-Rosales's own statement at sentencing during his allocution, in which he asked the court to "give [him] a chance to go back to [his] family." The court found that Estrada-Rosales was claiming, after sentencing, to have misunderstood the consequences of his plea because he was unhappy with the sentence he actually received, which prevented him from immediately leaving the United States.

¶32 Estrada-Rosales argues that the circuit court's finding in this respect was inconsistent with its finding that he understood that the court was the sole determiner of his sentence. We disagree. Estrada-Rosales's knowledge that the court was not bound by the parties' sentence recommendations in no way undermines the court's finding that Estrada-Rosales, nevertheless, was making statements to the court in order to influence it to order a time-served sentence.

14

¶33    The circuit court found that Estrada-Rosales could not have believed that he would be immediately deported upon sentencing.  Although the court, or one of the parties, could have clarified Estrada-Rosales's statements about deportation at the plea hearing, the court found that he nevertheless understood the plea forms and knew that he could be imprisoned for up to sixty years.  His trial counsel did not inform him otherwise, and the court found that he was feigning any misunderstanding about his plea.  Estrada-Rosales has failed to explain how any of the court's findings of fact are clearly erroneous.

## II.  Ineffective assistance of counsel

¶34    Estrada-Rosales next claims that his plea was not knowingly, intelligently, or voluntarily entered because his trial counsel was ineffective when she failed to correct his misunderstanding of the deportation consequences of his plea.  According to Estrada-Rosales, his trial counsel should have interjected at the plea hearing following his statements about deportation to clarify that "she did not promise him deportation, no one could promise deportation, and if he was entering the plea based on this erroneous belief, he needed to reconsider."

¶35    Ineffective assistance of counsel is another type of manifest injustice that can warrant plea withdrawal.  *State v. Shata*, 2015 WI 74, ¶29, 364 Wis. 2d 63, 868 N.W.2d 93.  To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his or her trial counsel's performance was deficient and that counsel's deficiency prejudiced the defense.  *Id.*, ¶33.  To establish prejudice in the plea withdrawal context, a defendant must demonstrate that but for trial counsel's errors, he or she would not have entered a plea and would have insisted on going to trial.  *State v. Burton*, 2013 WI 61, ¶50, 349 Wis. 2d 1, 832 N.W.2d 611.  "A claim of ineffective assistance of counsel is a mixed question of

fact and law." **Shata**, 364 Wis. 2d 63, ¶31 (citation omitted). We will uphold a circuit court's findings of fact unless they are clearly erroneous, but we independently determine whether counsel's assistance was ineffective. **Id.**

¶36 A defendant's trial counsel has a "duty to give correct advice" regarding deportation consequences of a plea if those consequences are "truly clear." **Padilla**, 559 U.S. at 369. Similar to our earlier assumption, *see supra* ¶26, we assume without deciding that it was "truly clear" at the time of Estrada-Rosales's plea hearing that immigration officials are precluded from removing from the United States an "alien" who is sentenced to prison until after that individual is released from incarceration.

¶37 We reject Estrada-Rosales assertion that his trial counsel was ineffective. As an initial matter, we again note that the circuit court found that Estrada-Rosales's trial counsel did not misinform him of the deportation consequences of his plea. As explained earlier, this finding is not clearly erroneous. Thus, trial counsel did not perform deficiently in this respect.

¶38 Relatedly, we have already concluded that the record supports the circuit court's findings regarding Estrada-Rosales's knowledge of the consequences of his plea, including that he would not be immediately deported if he received a prison sentence. Trial counsel testified that she did not believe that Estrada-Rosales actually misunderstood the consequences of his plea agreement. Accordingly, trial counsel was not deficient by failing to interject at the plea hearing because there was no misunderstanding regarding deportation consequences. Further, because the court found that Estrada-Rosales had actual knowledge of the deportation consequences of his plea, he cannot show that he was prejudiced by any alleged deficient performance. That is, Estrada-Rosales

cannot demonstrate that had his trial counsel interjected at the plea hearing, he would not have entered into an *Alford* plea.

### III. Sufficient factual basis for the plea

¶39    Lastly, Estrada-Rosales claims that he is entitled to withdraw his plea because the circuit court failed to establish a sufficient factual basis to support his *Alford* plea. A circuit court's failure "to establish a sufficient factual basis that the defendant committed the offense to which he or she pleads" can constitute a manifest injustice warranting plea withdrawal. *Nash*, 394 Wis. 2d 238, ¶32.

¶40    "An *Alford* plea is a conditional guilty plea, which allows [a] defendant to maintain his or her innocence outright, but nonetheless accept a conviction and sentence for the crime." *Nash*, 394 Wis. 2d 238, ¶33. Our state supreme court has held that "the circuit courts of Wisconsin may, in their discretion, accept *Alford* pleas." *State v. Garcia*, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995).

¶41    To accept an *Alford* plea, a circuit court must, among other duties, "determine that the summary of the evidence the [S]tate would offer at trial constitutes 'strong proof of guilt'" as to each element of the alleged crime. *Nash*, 394 Wis. 2d 238, ¶¶35-36 (alteration in original; citation omitted). "'Strong proof of guilt' is not the equivalent of proof beyond a reasonable doubt, but it is 'clearly greater than what is needed to meet the factual basis requirement under a guilty plea.'" *Id.* (citation omitted). A circuit court must "be satisfied that the facts in the record, as a whole, are sufficient to provide strong proof of guilt and overcome a defendant's protestations of innocence." *Id.*, ¶36.

¶42    "[W]hat constitutes an adequate record in a particular case is specific to the facts and circumstances of that case, and such determinations are left to the discretion of the circuit court." *Id.*, ¶38.  A circuit court erroneously exercises its discretion if it applies the wrong legal standard or if the facts of record fail to support the court's decision.  *State v. Ringer*, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448.

¶43    Estrada-Rosales does not contend that the complaint failed to allege facts sufficient to prove each element of Count 2.  Instead, he argues that "[r]eviewing courts have approved several means of establishing a factual basis for an *Alford* plea, but have not held that the probable cause portion of [a] criminal complaint [is] sufficient alone to establish strong proof of guilt."  *See, e.g.*, *State v. Spears*, 147 Wis. 2d 429, 438-40, 433 N.W.2d 595 (Ct. App. 1988) (concluding that witness testimony at a plea hearing offered a sufficient factual basis for an *Alford* plea); *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 646, 579 N.W.2d 698 (1998) (stating that preliminary hearing testimony from a victim and an officer constituted a sufficient factual basis for an *Alford* plea).  Estrada-Rosales contends that allegations within a criminal complaint do not constitute "evidence" the State could offer at "trial," *see Nash*, 394 Wis. 2d 238, ¶35 (citation omitted), and, therefore, he suggests that a circuit court can never rely solely on a criminal complaint in ascertaining the factual basis for an *Alford* plea.  Additionally, Estrada-Rosales argues that a criminal complaint cannot be used to form the basis for an *Alford* plea because such a plea entails a more stringent factual basis

requirement, and "post-charging discovery and pretrial rulings may completely change the evidentiary picture."[5]

¶44    We reject Estrada-Rosales's arguments.  There is no authority for the proposition that a circuit court can *never* rely on the probable cause portion of a criminal complaint to determine the factual basis for an *Alford* plea, regardless of the particular circumstances of a given case.  Courts routinely rely on criminal complaints to establish the factual basis for pleas, particularly when defense counsel stipulates, on the record, that in accepting a plea the court may rely upon the facts alleged in the complaint as evidence of the defendant's guilt.  *See, e.g.*, *State v. Black*, 2001 WI 31, ¶¶12-13, 242 Wis. 2d 126, 624 N.W.2d 363; *State v. Sutton*, 2006 WI App 118, ¶17, 294 Wis. 2d 330, 718 N.W.2d 146 ("Generally, the factual basis for a guilty plea may be established by reference to the allegations set forth in the criminal complaint.").  Indeed, Estrada-Rosales concedes that this court and our state supreme court have upheld circuit court factual basis determinations for *Alford* pleas that relied, in part, on the probable cause sections of criminal complaints.  *See Nash*, 394 Wis. 2d 238, ¶¶3, 42; *State v. Annina*, 2006 WI App 202, ¶¶7, 16-17, 296 Wis. 2d 599, 723 N.W.2d 708.

¶45    In addition, Estrada-Rosales entered into a negotiated plea agreement.  "Because an *Alford* plea often results from agreed-upon plea

---

[5] In his reply brief, Estrada-Rosales also argues that the circuit court erroneously exercised its discretion by "never stat[ing] that it was finding strong proof of guilt."  However, a court need not use "magic words" when accepting an *Alford* plea—instead, all that is required is that a court "be satisfied that the facts in the record, as a whole, are sufficient to provide strong proof of guilt and overcome a defendant's protestations of innocence."  *State v. Nash*, 2020 WI 85, ¶36, 394 Wis. 2d 238, 951 N.W.2d 404.  Here, the court clearly addressed the issue of whether there was a factual basis to accept the *Alford* plea, and we reject Estrada-Rosales's argument to the contrary.

negotiations between a defendant and the State, a court 'need not go to the same length to determine whether the facts would sustain the charge as it would [where] there is no negotiated plea.'" *Nash*, 394 Wis. 2d 238, ¶36 (alteration in original; citation omitted).

¶46 Under the facts of this case, the circuit court did not erroneously exercise its discretion by relying on the criminal complaint in ascertaining whether there was a sufficient factual basis to support Estrada-Rosales's *Alford* plea that was entered as part of a negotiated plea agreement. Estrada-Rosales, "having had the benefit of reviewing discovery materials and charging documents with counsel, accepted the plea offer of the State." *See Nash*, 394 Wis. 2d 238, ¶3. "He acknowledged that he understood the elements of the offense and agreed that the State's evidence was sufficient to prove him guilty."[6] *See id.* His trial counsel stipulated on the record that the probable cause section of the criminal complaint provided an adequate factual basis to support his *Alford* plea, and Estrada-Rosales does not argue that his trial counsel was ineffective by doing so.

¶47 We determine that the circuit court did not erroneously exercise its discretion by concluding that the probable cause section of the criminal complaint—which was particularly detailed and was based on the review of police

---

[6] Estrada-Rosales contends that he did not admit that the State's evidence was sufficient to convict him. In support of this stance, he cites his statements during the plea hearing in which he said that "[t]here is no evidence that I committed any crime" and "[i]f they don't have evidence that I even touched her that's what I don't like, that they're saying they have evidence." But when questioned by the circuit court following these statements, Estrada-Rosales agreed that "if we had a trial it is most likely that a jury would return with a guilty verdict." This language was also on a page of the plea forms, translated into Spanish, which Estrada-Rosales initialed. The court reasonably relied on Estrada-Rosales's belief that he would be found guilty at trial. Although the court initially expressed concern that Estrada-Rosales did not understand the basis of an *Alford* plea, the court provided time for Estrada-Rosales and his trial counsel to meet and discuss the topic further before proceeding.

reports from two officers and a detective with the Green Bay Police Department—constitutes strong proof of guilt as to each element of the alleged crime. According to the complaint, Sara informed her parents that Estrada-Rosales had "touch[ed] her body parts." Sara demonstrated where Estrada-Rosales had touched her using a doll, and she made a "tickling type motion" below the doll's "beltline."

¶48 Upon learning of Sara's allegations, Molly's mother—the sister of Sara's mother—then asked Molly whether Estrada-Rosales "had ever touched her."[7] Molly "busted out crying when [she] was asked this question," and she stated, "Yes, he has touched me a lot of times." Molly further explained that the touching occurred "between the legs" and that Estrada-Rosales had "put a finger inside a hole down there and put it in and out." Molly alleged that Estrada-Rosales had assaulted her approximately twenty times beginning when the family had returned from a vacation in August 2017. In addition, Molly provided locations of where the assaults would typically occur, which, according to her mother, matched instances when Estrada-Rosales was with Molly. Law enforcement also learned from a family member of the victims that

---

[7] Although there was never a pretrial ruling on the admissibility of evidence related to Count 1 because both counts were charged in the same case, *see Nash*, 394 Wis. 2d 238, ¶42, evidence need not be ruled admissible at a trial to form the factual basis for a plea, *see Edwards v. State*, 51 Wis. 2d 231, 236, 186 N.W.2d 193 (1971); Wis JI—Criminal SM-32 (2021). Even if evidence must be admissible to support a factual basis for an *Alford* plea, Estrada-Rosales cites no authority for the proposition that a circuit court must rule on the admissibility of all evidence before using it to ascertain whether a factual basis exists to support a plea. We believe it is sufficient to conclude that the court would have reasonably exercised its discretion by permitting the State to present evidence of Molly's allegations at a trial on Count 2. *See State v. Marinez*, 2011 WI 12, ¶20, 331 Wis. 2d 568, 797 N.W.2d 399 ("Because this is a child sexual assault case with a young victim, the greater latitude rule 'permit[s] a more liberal admission of other crimes evidence.'" (alteration in original; citation omitted)). Estrada-Rosales does not explain why the evidence underlying Count 1 would not have been admissible at trial even if he had proceeded to trial only on Count 2.

Estrada-Rosales had watched Molly and Sara "every day when he [was] not working."

¶49 Furthermore, Sara and Molly were forensically interviewed. The criminal complaint outlined those interviews in detail, and the statements provided during the interviews matched what the victims initially alleged to their parents. Molly further alleged during her forensic interview that Estrada-Rosales would touch his "private part" to her private part when he was assaulting her. Molly added that "slime" would come from Estrada-Rosales's private part.

¶50 On this record, Estrada-Rosales has failed to show that the circuit court did not establish a sufficient factual basis to support his *Alford* plea. In all, Estrada-Rosales has not met his burden to prove, by clear and convincing evidence, that a manifest injustice would result if he were not permitted to withdraw his plea.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.